FRANCISCO QUIÑONES CHERENA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

Núm. 1031.—*Sometido:* Noviembre 7, 1938. *Resuelto:* Enero 24, 1939.

*Negrón López & Negrón López,* abogados del recurrente; el registrador recurrido compareció por escrito.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Presentada para su inscripción en el Registro de la Propiedad de San Germán la escritura pública núm. 97 de agosto 3, 1938, otorgada ante el Notario José A. Negrón López, por virtud de la cual los esposos Francisco Fernández y Ramona Rodríguez segregaron de una mayor de su propiedad cierta finca que vendieron a Francisco Quiñones, el registrador se negó a ello "por observarse que no se ha presentado el plano aprobado por el Comisionado del Interior de Puerto Rico, de la finca segregada y vendida, en armonía con lo dispuesto por la Resolución Conjunta núm. 55 de la Asamblea Legislativa de esta Isla aprobada el 15 de mayo de 1937 y lo resuelto por el Congreso de los Estados Unidos en relación con la validez de las resoluciones legislativas de esta Isla; . . ."

No conforme el comprador, interpuso el presente recurso gubernativo, señalando cuatro errores cometidos a su juicio por el registrador, al estimar que la Resolución Conjunta Núm. 55 aprobada en 15 de mayo de 1937 requiere la presentación de planos en el registro de la propiedad, que los términos de dicha Resolución Conjunta, aún refiriéndose a la presentación de planos en el registro de la propiedad, son mandatorios y no directivos, que la omisión del plano constituye un defecto insubsanable y que la Resolución Conjunta Núm. 55 aprobada en 15 de mayo de 1937 está vigente, ya

que la misma fué anulada por este tribunal y no ha sido reenactada por la Asamblea Legislativa de Puerto Rico.

Del cuarto error desistió propiamente a nuestro juicio el recurrente porque si bien es cierto que esta Corte Suprema en el caso de *Nazario* v. *Registrador*, 53 D.P.R. 136 decidió que la Resolución Conjunta Núm. 55 de 1937 (Leyes de 1936–1937, pág. 639) era inconstitucional y nula por haber sido aprobada en contravención a las disposiciones de la sección 34 de la Ley Orgánica, también lo es que el Congreso de los Estados Unidos, el 16 de junio de 1938 decretó una ley que lee como sigue:

". . . Que todas y cada una de las resoluciones conjuntas aprobadas en cualquier tiempo por la Legislatura de Puerto Rico o por la anterior asamblea legislativa, y aprobadas por el Gobernador, queden, y las mismas son por la presente, en todas sus partes, ratificadas, aprobadas y confirmadas; y todos los actos realizados así como los contratos y traspasos hechos o celebrados o emitidos o entregados o aceptados o recibidos, incluyendo bonos, escrituras, y traspasos de propiedad inmueble o mueble o servidumbres o derechos intangibles o incoados, y documentos y papeles de toda naturaleza, contribuciones cobradas y el cobro de las mismas, desembolsos de dinero y los resguardos de los mismos, y todos los demás pasos, actos, sentencias, decretos y procedimientos de toda y cualquier clase o naturaleza que se hayan celebrado, hecho, llevado a cabo, tomado, tramitado, ejecutado, emitido, entregado, o recibido o aceptado bajo o por virtud de cualquier tal resolución conjunta, ya de la Legislatura de Puerto Rico o de la anterior asamblea legislativa, sean, y por la presente las mismas son, en todas sus partes legalizadas, ratificadas, confirmadas y convalidadas tan completamente a todos los fines e intenciones, y para que tengan el mismo efecto, valor, alcance y efectividad como si todas y cada una de dichas resoluciones hubieran sido en su origen aprobadas, válidamente, y firmadas (approved) por el Gobernador, en la forma de 'Leyes' de la legislatura y de la asamblea legislativa, respectivamente, en vez de en la forma de 'resolución conjunta.' " (Public—No. 641—75th Congress, Chapter 460—3rd Session, H. R. 10652.)

En relación con los señalamientos primero y segundo, diremos que son insostenibles de acuerdo con lo ya resuelto

por esta corte en los casos de *Molini* v. *Registrador,* 52 D.P.R. 360; *Fermoso* v. *Registrador,* 52 D.P.R. 384, y *Estados Unidos de América* v. *Registrador,* 53 D.P.R. 944, en el último de los cuales la corte, por medio de su Juez Asociado Sr. de Jesús, se expresó así:

"El objeto primordial de la legislación que nos ocupa, según se desprende de todo su contexto y especialmente de su título y del preámbulo que precede a su articulado, es facilitar la formación del plano catastral de la Isla de Puerto Rico, expresándose a la vez en el preámbulo otras ventajas de segundo orden que se obtendrían con la ameritada legislación.

.    .    .    .    .    .    .    .    .    .

"La sección primera no hace obligatoria la presentación de planos para su aprobación y archivo por el Comisionado del Interior, pero inspirado quizá en la norma seguida por los redactores de la Ley Hipotecaria para obligar a los interesados a presentar sus títulos en el Registro de la Propiedad, el legislador, persiguiendo el mismo propósito con respecto a los planos, indirectamente hace compulsoria su presentación, al disponer en la sección 2 que no se admitirá en los registros de la propiedad, cortes de justicia y centros gubernativos ninguna copia de planos que no haya sido previamente aprobada por el Comisionado del Interior de Puerto Rico. Muy corriente es en los tribunales de justicia presentar en evidencia y acompañar como *exhibits* planos de fincas rústicas y urbanas. Con menos frecuencia se presentan también planos en los centros gubernativos en relación con asuntos administrativos; pero no sucede lo mismo en los registros de la propiedad, donde ni la Ley Hipotecaria ni ninguna otra legislación requiere la presentación de planos. Viene entonces la sección 7 a suplir el defecto exigiendo que de toda segregación o agrupación que se haga de cualquier finca o fincas deberá presentarse plano, el que desde luego, de acuerdo con la sección 2, deberá ser aprobado por el Comisionado del Interior. Pudo el legislador, a los fines expresados, ir más lejos aún y requerir la presentación de planos, no solamente cuando de inscribir segregaciones o agrupaciones se tratare, si que también en el caso de cualquier otra operación que hubiera de practicarse en el registro de la propiedad. El no haber ido tan lejos como pudo hacerlo no afecta, desde luego, la eficacia de la disposición legislativa. Tampoco empece a la validez de la sección 7 el hecho de que el plano no sea necesario para practicar operaciones en el Registro ni que no

exista deber alguno por parte del registrador de archivarlo, pues como hemos indicado, el fin perseguido por el legislador es conseguir indirectamente la presentación de los planos al Comisionado del Interior, aumentando así los casos en que tal aprobación y archivo son necesarios, y consiguientemente acumulando mayor número de ellos para facilitar la formación del plano catastral.

''A los fines del Registro, se daría cumplimiento al precepto legislativo acompañando el plano al documento cuya inscripción se solicita, devolviéndolo luego el Registrador al interesado una vez inscrito el documento, expresando en la nota de inscripción al calce del mismo, así como en el asiento que cause el título en el registro, que el plano se presentó y lo tuvo el registrador a la vista conforme exige la ley.

''El hecho de que ningún otro fin práctico pudiera obtenerse con la legislación que nos ocupa es inmaterial. No es dable a los tribunales entrar a considerar los méritos intrínsecos de una ley, incumbencia ésta del poder legislativo y no del judicial, cuya misión es aplicar e interpretar las leyes.''

■ Decidido que la resolución conjunta de que se trata requiere mandatoriamente la presentación en el registro del plano de la segregación, veamos el alcance que tiene la falta de cumplimiento del precepto en cuanto a la inscripción de la compraventa de la finca segregada, y con ello entraremos en la consideración del tercero de los errores señalados.

Sabemos que el registrador se negó a inscribir el contrato por el solo motivo de la no presentación del plano. ¿Pudo hacerlo? La Resolución Conjunta por su sección 2 ordena que ''no se admitirá en los registros de la propiedad . . . ninguna copia de planos que no haya sido previamente aprobada por el Comisionado del Interior de Puerto Rico'' y luego por la 7 prescribe que ''de toda segregación o agrupación que se haga de cualquier finca o fincas, deberá presentarse plano, haciendo constar en él la parte segregada o las fincas que se agrupen.''

Se limita, pues, a imponer una obligación que debe cumplirse. No ordena que su falta de cumplimiento impida la inscripción del contrato que guarda relación con la misma.

Siendo ello así, debemos recurrir a la propia Ley Hipotecaria para conocer cuáles son los casos en que debe negarse la inscripción o verificarse haciendo constar el defecto o los defectos subsanables que el registrador advierta.

Dice el artículo 65 de dicha Ley Hipotecaria tal como fué enmendado por la Ley Núm. 20 de 9 de julio de 1936 (Leyes de ese año, Tercera Legislatura Extraordinaria, pág. 153), en lo pertinente (itálicas nuestras):

"Artículo 65.—*Serán faltas subsanables las que afecten a la validez del mismo título, sin producir necesariamente la nulidad de la obligación en él constituída.*

"Los registradores no suspenderán por defectos subsanables la inscripción, anotación o cancelación de ningún título. En la inscripción harán constar los defectos que contenga el título y en cualquier tiempo en que se presente la documentación para subsanarlo, se hará constar la subsanación por medio de nota marginal.

"*Serán faltas no subsanables las que produzcan necesariamente la nulidad de la obligación.*

.   .   .   .   .   .   .   .   .   ."

Por el hecho de no levantarse el plano, ni por el de no presentarse en el registro, no se produce necesariamente la nulidad del contrato que se trata de inscribir, no pudiendo, por tanto, calificarse la falta de insubsanable. Tampoco puede sostenerse que la falta de presentación del plano afecte la validez del título. Estrictamente tampoco podría calificarse el defecto de subsanable.

Ahora bien, se trata de un deber impuesto por la ley dejado de cumplir y nos parece que lo lógico es que el registrador haga constar dicha falta de cumplimiento a fin de que los libros del registro, de acuerdo con el propósito fundamental de dicha institución, hablen claro y adviertan a los futuros contratantes en relación con el inmueble que hay algo omitido que para su beneficio pueden exigir que se supla, y es en este sentido que la falta de presentación del plano puede y debe anotarse a nuestro juicio como defecto subsanable ya que en verdad es algo que se está obligado

a hacer y no se hizo y que puede perfectamente hacerse luego, corrigiéndose entonces la omisión.

*Debe, en tal virtud, revocarse la nota recurrida, ordenándose la inscripción solicitada con el defecto apuntado.*