RAMÓN MONTANER, en su carácter de ADMINISTRADOR DEL FONDO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL, compuesta por los Sres. M. LEÓN PARRA, PRESIDENTE y F. PAZ GRANELA y JUAN M. HERRERO, COMISIONADOS ASOCIADOS, demandada, y CARMEN y CASIMIRA MATOS, peticionarias ante la Comisión Industrial.

Núm. 178.—*Sometido:* Diciembre 18, 1939.—*Resuelto:* Enero 16, 1940.

Hon. *Procurador General Interino* E. Campos del Toro y E. De Aldrey, *Procurador General Auxiliar*, y *Víctor J. Vidal González* y *Guillermo Atiles Moréu*, Asesores Legales los últimos del Fondo del Estado, abogados del recurrente; *M. León Parra*, abogado de la demandada; *Virgilio Brunet* y *Miguel A. Casiano*, abogados de las peticionarias ante la Comisión.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El obrero Juan Matos trabajaba abriendo brechas en las zanjas de riego de una colonia de cañas de la empresa Luce & Company. Su cadáver fué encontrado dentro de una de esas zanjas, atribuyéndose su muerte a asfixia por sumersión al caer dentro de la zanja, en el curso de un ataque epiléptico. La Comisión Industrial resolvió que el citado obrero había sufrido un accidente en el curso del empleo y como consecuencia del mismo. El Administrador del Fondo del Seguro del Estado interpuso el presente recurso, alegando, en oposición a lo resuelto por la Comisión Industrial, "que el accidente en que perdió la vida el obrero no provino de un acto o función inherente a su trabajo, ni ocurrió como consecuencia del mismo, sino que, por el contrario, fué el resultado lógico de su predisposición epiléptica, sin que hubiera nada en el empleo que indujera el ataque epiléptico o pudiera ser causa del mismo."

La cuestión legal que nos presenta este caso es nueva en esta jurisdicción, mas no así en las jurisdicciones inglesa y de los diversos estados de la Unión Americana, ante las cuales se ha presentado en los numerosos casos citados en los alegatos de las partes aquí contendientes.

En el caso de *Georgetown College* v. *Stone*, 61 A. D. C. 200, 59 F. (2d) 875, el obrero sufrió un ataque epiléptico mientras estaba usando una manguera de agua caliente en el curso de su empleo y murió a consecuencia de las quemaduras que le produjo el agua caliente. Se concedió la indemnización solicitada porque "las lesiones en este caso fueron causadas por las quemaduras producidas por la instrumentalidad del patrono y no por la epilepsia." Igual resolución fué dictada en *Rockford Hotel Co.* v. *Industrial Commission*, 132 N. E. 759, 300 Ill. 87, 19 L.R.A. 80, en que el empleado sufrió un ataque epiléptico y cayó en un depósito de cenizas; en *Industrial Commission of Ohio* v. *Nelson*, 186 N. E. 735, 127 Ohio St. 41, en cuyo caso el empleado atacado de epilepsia sufrió una conmoción cerebral al caer contra la máquina en la cual trabajaba; y en *Baltimore Dry Docks & Ship Building Co.* v. *Webster*, 139 Md. 616, 116 A. 842, en el que se resolvió que la muerte de un carpintero empleado en la construcción de un barco fué el resultado de un accidente en el curso y como consecuencia del empleo, cuando al bajarse el empleado para recoger sus herramientas de la cubierta del barco sufrió un ataque epiléptico que le hizo caer de espaldas por sobre la popa, fracturándose el cráneo. En este último caso, la corte se expresó así:

"De acuerdo con las autoridades, creo que el caso es claro; un accidente no deja de serlo porque la causa remota del mismo sea una condición idiopática del hombre lesionado. Debemos separar esa condición idiopática de los demás hechos y recordar que él estaba obligado a correr el riesgo por la naturaleza misma del empleo, y que la caída peligrosa fué motivada por las condiciones de ese empleo."

Véanse también: *Miller* v. *Beil*, 75 Ind. App. 13, 129 N. E. 493; *Vulcan Detinning Co.* v. *Industrial Commission*, 295 Ill. 141, 128 N. E. 917; y *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421, L.R.A. 1916 D. 154.

La teoría en que se basan las decisiones que hemos citado es que el ataque epiléptico no hubiera causado las lesiones o la muerte, a no ser por el hecho de que el trabajo que el

obrero tenía que realizar le obligaba a estar, en aquel momento, en el sitio específico en que recibió las lesiones. Si aplicamos esa teoría a los hechos y circunstancias concurrentes en el caso de autos, tenemos que llegar a la conclusión de que el obrero Juan Matos no hubiese perdido su vida a no ser por el hecho de que el trabajo que tenía que realizar para su patrono le obligaba a estar cerca o dentro de zanjas de riego, de una profundidad de dos o tres pies, llenas de agua en cantidad suficiente para que una persona que cayera en ellas pudiese perecer ahogada. Cuando la Industria expone al obrero a un riesgo al cual no hubiera estado expuesto bajo las circunstancias de su vida ordinaria, ella debe responder en el caso de muerte o lesiones sufridas en el curso del empleo y como consecuencia de un riesgo inherente al mismo.

El espíritu de la "Ley de Compensaciones por Accidentes del Trabajo" (Ley núm. 45 de abril 18, 1935) es hacer compensables las lesiones o muertes de obreros como consecuencia de accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste. Las excepciones a dicha regla, enumeradas en la sección 4 de la citada ley, son (*a*) cuando el obrero se causare voluntariamente la lesión; (*b*) cuando el obrero estuviere embriagado y la embriaguez fuere la causa del accidente; (*c*) cuando la lesión ha sido causada por el acto criminal de una tercera persona; y (*d*) cuando la imprudencia temeraria del obrero ha sido la única causa de la lesión. La especificación de los casos en que, por excepción, no puede recobrarse indemnización por un accidente ocurrido en el curso del empleo y como consecuencia del mismo, excluye todas las demás causas que pudieran alegarse en oposición a una reclamación. *Inclusio unius est exclusio alterius. Bonilla* v. *Mitchell*, 51 D.P.R. 126. Si la caída del obrero Juan Matos hubiese sido motivada por su propia negligencia, seguramente el Fondo del Seguro del Estado no hubiera podido interponer la defensa de negligencia contribuyente en oposición a la reclamación. No vemos razón alguna que nos obligue a esta-

blecer una diferencia entre la negligencia contribuyente y la condición idiopática del obrero, como causas determinantes de un accidente, cuando ni una ni otra aparecen incluídas entre las circunstancias que de acuerdo con la sección 4 de la ley (supra) impiden la concesión de una compensación.

Los casos de *Mausert* v. *Albany Builders' Supply Co.*, 164 N. E. 729, 250 N. Y. 21; *Andrews* v. *L. & S. Amusement Corporation*, 170 N. E. (N.Y.) 506–507; y *Barath* v. *Arnold Paint Company*, 238 N. Y. 625, 144 N. E. 918, citados por el recurrente, no sostienen, a nuestro juicio, su contención de que un accidente ocurrido bajo las circunstancias del caso de autos no es compensable. En *Andrews* v. *L. & S. Amusement Corporation*, supra, la corte se expresó así:

"El patrono se dedicaba a la explotación de un teatro. En ese día Leslie Andrews fué empleado para pintar la marquesina. Le pidió a un tal Van Mersereau, compañero de trabajo, un cubo de agua, y ambos anduvieron hacia la pluma a lo largo de un pasillo en la esquina del edificio. Mersereau llevaba el cubo. Mientras marchaban así, Andrews sufrió un ataque. Mersereau lo describe diciendo que vió sus ojos dando vueltas y la espuma blanca que salía de su boca. Andrews cayó, dando con su cabeza sobre la acera de concreto. La Comisión Industrial declaró que era un hecho que Andrews, 'sufrió un ataque epiléptico que le hizo caer, y al caer, su cabeza dió contra la acera de cemento, sufriendo una fractura del cráneo, de la que falleció el mismo día.' La Comisión dictó una resolución declarando que la muerte resultó de lesiones accidentales provenientes de y en el curso del empleo. La División de Apelación ha confirmado el fallo por una corte dividida, por la autoridad de *Mausert* v. *Albany Builders' Supply Co.*, 250 N. Y. 21, 164 N. E. 729. Existe una distinción entre ese caso y el presente.

"Mausert, que era conductor de un carro de caballos, se cayó de su asiento en el *truck* al pavimento, pasándole las ruedas por encima de su cuerpo, lo que le causó la muerte. Él estaba en el curso de su empleo, y nosotros sostuvimos que su muerte ocurrió como consecuencia de su empleo. El riesgo de caerse desde el asiento de un *truck* y ser lesionado era un incidente y un riesgo de su empleo. Cada día que él conducía el *truck* corría el riesgo o peligro de caerse, por descuido o por quedarse dormido, y de ser lesionado por los caballos, por otro vehículo o por el suyo propio. A este riesgo, dijimos en la

opinión, no estaría expuesto mientras estuviese sentado en una silla en su casa, o sobre la tierra, o aún mientras anduviese por las calles. Fué como conductor de un carro que incurrió en esos riesgos. *Barath* v. *Arnold Paint Co.*, 238 N. Y. 625, 144 N. E. 918, citado en la opinión en el caso de Mausert, fué otro caso de lesión resultante de un ataque apoplético, con caída desde un andamio, que causó una fractura del cráneo. La conclusión en ese caso fué que el riesgo o peligro era uno resultante del empleo porque la pérdida del control por razón de la apoplegía, mientras se está en un andamio, resultaría en una seria caída. *El lugar en que se realizaba el trabajo aumentó el riesgo y el peligro de tal padecimiento.*

"Ninguno de esos riesgos o peligros adicionales aparecen en los hechos de este caso. Andrews estaba sobre la acera; no había comenzado a pintar; iba andando con su compañero a buscar un cubo de agua. El ataque epiléptico le hizo caer sobre la acera, dándose en la cabeza y fracturándose el cráneo. ¿Dónde había allí un riesgo adicional debido al empleo? El mismo hubiese sido el resultado si él hubiese estado yendo a o viniendo de su empleo, o aún dentro de su propia casa, si se hubiese caído y golpeado su cabeza contra una silla, mesa u otra substancia dura. Si el ataque epiléptico por sí solo le hubiese matado, al igual que un ataque cardíaco, todos estamos de acuerdo en que no habría derecho e indemnización. *El riesgo de caer sobre el pavimiento durante el ataque no se debe al empleo. Si Andrews se hubiese caído desde una escalera, desde un andamio o dentro de un agujero, las oportunidades de sufrir una lesión hubiesen sido aumentadas. Si hubiese ocurrido un accidente que causara su caída, tendríamos otro elemento en el caso. No hubo accidente; la caída se debió a desórdenes internos, y las lesiones no resultaron de ningún riesgo adicional impuesto por el empleo. Esta distinción existe en numerosos casos.*" (Citas.) (Bastardillas nuestras.)

Véanse, por la relación que puedan tener con la resolución de este caso, los de *Montaner* v. *Comisión Industrial*, 54 D.P.R. 722, y *Montaner* v. *Comisión Industrial y Herederos de Santiago*, 54 D.P.R. 121.

*Por las razones expuestas opinamos que la muerte de Juan Matos fué debida a un accidente ocurrido en el curso del empleo y como consecuencia de un riesgo inherente al mismo y que la resolución recurrida debe ser confirmada.*