330

Ramón Montaner, Administrador del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, compuesta por los Sres. M. León Parra, Presidente y F. Paz Granela y Juan M. Herrero, Comisionados Asociados, demandada, y Santos Jiménez Gautier, peticionario ante la Comisión Industrial, recurridos.

Núm. 201.—*Sometido:* Junio 17, 1940. *Resuelto:* Julio 18, 1940.

*Hon. Procurador General George A. Malcolm, E. de Aldrey, Procurador General Auxiliar y Víctor J. Vidal González y G. Atiles Moréu, abogados los dos últimos del Fondo del Seguro del Estado, abogados del recurrente; M. León Parra, abogado de la Comisión; Virgilio Brunet y Miguel A. Casiano, abogados de los beneficiarios.*

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Isidoro Jiménez, un estibador, falleció el 25 de marzo, 1939, mientras trabajaba a bordo del vapor "Millinocket". El Administrador del Fondo del Estado denegó la compensación, fundado en que el obrero había muerto de causas naturales. Sus beneficiarios apelaron para ante la Comisión Industrial y ese organismo celebró vistas públicas en agosto 10 y octubre 4.

Los beneficiarios alegaron que el obrero había muerto de un accidente en el curso de su empleo. El Fondo del Estado sostuvo que la muerte sobrevino de causas naturales, y que además al obrero y sus beneficiarios debía negárseles compensación toda vez que el obrero trabajaba ilegalmente, por estar él bajo tratamiento con motivo de un accidente anterior y aún no había sido dado de alta.

La Comisión dictó una resolución en febrero 20, 1940 y halló los siguientes hechos:

En la mañana del día en cuestión el finado obrero trabajaba en unión a otros en la bodega núm. 4 del vapor "Millinocket", perteneciente a la Bull Insular Line. Estibaban azúcar en sacos que pesaban 250 libras cada uno. Estos sacos eran bajados a la bodega en eslingas de cinco sacos cada una. El tubo de la hélice ocupa el centro de la bodega. Al bajarse la eslinga ésta descansa contra el lado del tubo de la hélice a unos cuantos pies del piso. Entonces se despega la eslinga del tubo de la hélice y se baja hasta el sitio que se desee. De allí los sacos son colocados en una estiba. Esto lo hacen dos obreros que agarran el saco por las extremidades y lo lanzan mediante un movimiento rápido.

La Comisión copia en su resolución parte del testimonio de Pascual Román, testigo ocular. Según este testigo el finado obrero, en unión a otro, halaron la eslinga como hasta unos doce pies del tubo de la hélice. Cogieron el primer saco y Jiménez se cayó de espaldas. Falleció casi inmediatamente. Habían estado trabajando como una hora antes de suceder esto.

El obrero sufría de aortitis sifilítica; de estenosis de las arterias coronarias; de hipertrofia cardíaca; de arteriosclerosis generalizada y de lesiones crónicas en la aorta y en las arterias coronarias. La Comisión no hace ninguna conclusión en cuanto a la causa de la muerte (desde el punto de vista patológico) mas se refiere a la autopsia y al informe preparado por la Escuela de Medicina Tropical.

Según el Dr. Martínez Alvarez, quien practicó la autopsia, la muerte se debió a "la decompensación aguda cardíaca de orden ventricular, habiendo producido el colapso por insuficiencia aórtica subsiguiente a hipertrofia cardíaca y dilatación del cayado de la aorta."

El informe del Dr. Koppisch, del Departamento de Patología de la Escuela de Medicina Tropical, a quien se enviaron las vísceras para ser examinadas, lee:

"Éste es un caso de aortitis sifilítica muy extensa, avanzada y activa, con muerte repentina de estenosis de la ostia coronaria."

La Comisión copia entonces parte de las declaraciones de los doctores Vadi, Janer y Piñero. Los primeros dos médicos, peritos de los peticionarios, declararon que la muerte fué consecuencia directa del esfuerzo. El Dr. Piñero dijo que el esfuerzo pudo haber producido la muerte pero que ello fué tan sólo una coincidencia; que el hombre estaba sentenciado a morir en cualquier tiempo; que pudo haber muerto mientras dormía. El Dr. Janer estuvo de acuerdo con esta última manifestación.

La conclusión fué:

"Es innegable que Isidoro Jiménez tenía lesiones antiguas en su corazón, todas de carácter grave, pero es innegable también que murió en el momento de hacer un movimiento rápido para lanzar a la estiba un bulto que pesaba 250 libras y que agarraba por dos extremos, mientras su compañero Pascual Román, lo agarraba por los otros dos." (Resolución, Comisión Industrial, feb. 20, 1940, pág. 8.)

La Comisión cita entonces un número de casos de cortes de los Estados Unidos que han resuelto que debe concederse compensación cuando la muerte es producida por un esfuerzo extraordinario a pesar de que el obrero padeciera de una enfermedad crónica. También se copia alguna jurisprudencia, que no es aplicable, relacionada con casos en que se ha concedido compensación a obreros que han adquirido afecciones cardíacas al levantar cargas muy pesadas.

Las palabras finales de la Comisión fueron:

"Por lo expuesto resolvemos que el obrero Isidoro Jiménez, caso núm. C. I. 7358, murió en el curso del empleo y como consecuencia del mismo..."

No se hizo conclusión final en torno a si el obrero trabajaba legalmente o no al momento de su muerte. El Fondo del Estado radicó en marzo 1 una moción de reconsideración. Ésta fué denegada sin opinión el 25 de abril, 1940.

Una segunda moción presentada el 29 de abril, nuevamente alegaba que una cuestión importante aún permanecía sin resolver. En mayo 10, 1940, se dictó una nueva resolución declarando sin lugar la segunda moción y confirmando la primera de febrero 20, pero resolviendo la cuestión planteada por el Fondo del Estado.

La resolución decía:

"La muerte de este obrero sobrevino el día 25 de marzo de 1939 y sus beneficiarios presentaron como evidencia un documento firmado por el Dr. Rolenson, que fué marcado *Exhibit* 1 del peticionario, en que constaba que habiendo sufrido un accidente del trabajo el día 6 de marzo de 1939, consistente en contusión y laceración de los dedos anular y meñique de la mano izquierda, se le daba de alta el día 23 del propio mes y año 'para que reanudara su trabajo en marzo 24'. El Dr. Rolenson firmante de ese documento, informó oralmente que habiéndose quejado en ese momento el obrero de que todavía no estaba completamente rehabilitado de su lesión, y encontrando él que era cierta la alegación que hacía le concedió tres días más de tratamiento médico o sea hasta el día 27 del propio mes y año. El obrero, como dijimos, murió el día 25 cuando trabajaba trasegando sacos de azúcar en la bodega de un barco."

La Comisión no decidió específicamente que el obrero estaba trabajando mientras se hallaba bajo tratamiento, mas ésta es la inferencia. La resolución continúa diciendo:

"Y ahora tenemos que resolver nosotros si de acuerdo con la ley en vigor el hecho de que estuviera trabajando cuando aún no ha sido dado de alta de una lesión anterior y le sobreviene un nuevo accidente, pierde todo derecho a la compensación por este último, según sostiene el Fondo del Estado.

" . . . . . . . .

"Nada pues provee la ley sobre el punto que levanta el Administrador del Fondo del Estado. No hay prohibición alguna para un obrero convaleciente de un accidente del trabajo, si antes de ser dado de alta definitiva se encuentra con ánimo de trabajar y lo hace. Nos parece deducir de la lectura del apartado 2 del Art. 3, que el único derecho que cabe al Administrador en caso de que un obrero actuara así, es privarle de la dieta que le iba a pagar en compensación del jornal que hubiera podido percibir en caso de no haberle

ocurrido la primera lesión; porque el derecho a percibir esta dieta del Fondo del Estado es en compensación, como dice la ley, del jornal que hubiere podido percibir a no ser por la consecuencia del accidente. Y es obvio que si él durante ese tiempo en que tenía derecho a reclamar del Fondo del Estado esa compensación trabajare y ganase un jornal de un patrono, el Administrador del Fondo del Estado no estaba obligado a pagarle esa compensación. Pero en ninguna parte de la ley, repetimos, podemos descubrir que tal actuación sea fatal al obrero hasta el punto de privarle de la compensación a que tuviera derecho por el nuevo accidente sufrido, si por la naturaleza de la lesión sufrida anteriormente, como sucede en el caso de autos, él se encuentra en condiciones de poder trabajar.''

Convenimos con la Comisión.

Al resolver la primera cuestión levantada por el Fondo del Estado debemos hacer constar que la Comisión no debió acudir a otras jurisdicciones en busca de jurisprudencia.

El caso de *Sucn. París* v. *Comisión Industrial,* 52 D.P.R. 441, es muy similar al presente. En dicho caso, también, el finado era un obrero corriente de la Bull Insular Line. En el presente recurso Jiménez y otro obrero despegaron una eslinga que pesaba 1,250 libras del tubo de la hélice en la bodega. En aquél, París y otros tenían que voltear una caja que pesaba como 1,200 libras. Ambos cayeron de espaldas y murieron poco después. En dicho caso, al igual que en el presente, el certificado de la Escuela de Medicina Tropical revela que la muerte se debió a estenosis de la aorta. Este tribunal dijo:

''Desde luego, podría admitirse que el obrero no hubiera muerto el mismo día de no habérsele asignado el trabajo de ayudar a voltear la caja. Nuestra respuesta a esto es que el campo de casos en que un hombre moriría bajo semejantes circunstancias es relativamente pequeño. La recurrente, conforme hemos visto, no entra en todas estas consideraciones, mas dadas las palabras de la ley no creemos que podemos decir que la muerte de París Parrilla fuera el resultado de un accidente proveniente de un 'acto o función inherente a su trabajo o empleo.' ''

Empero, esa decisión ha sido aparentemente revocada de no ser distinguible por implicación, en casos posteriores.

En el caso de Benito Santiago este tribunal dijo:

"La Comisión resolvió que la muerte de Santiago se debió al cumplimiento por su parte de un acto que estaba en el curso de su empleo. Hubo prueba tendente a sostener esta conclusión. También hubo prueba tendente a demostrar que el acto en cuestión de ordinario requería la fuerza combinada de dos o tres hombres. Santiago trató de hacerlo por sí solo. Mientras estaba así ocupado tuvo una hemorragia cerebral. Le sobrevino la muerte. Hubo prueba tendente a demostrar que un obrero de experiencia podía efectuar sin esfuerzo lo que Santiago trató de hacer y que Santiago era un obrero de experiencia. No hubo decisión específica sobre este punto. Sin embargo, de toda la prueba se desprende lógicamente que la muerte de Santiago fué producida por un acto que, dado su estado físico para aquel entonces, equivalía en el caso suyo a un esfuerzo. A nuestro juicio se desprende que su muerte se debió a un accidente dentro del significado del artículo 2 de la Ley de Compensaciones por Accidentes del Trabajo. El presente no es el caso de un obrero a quien, mientras está en su trabajo, le sobreviene la muerte de causas naturales o de cualquier causa distinta a un acto fortuito inesperado que sea el resultado de un acto o función inherente a su trabajo o empleo." (*Montaner, Admor.* v. *Comisión Industrial,* 54 D.P.R. 122.)

Algún tiempo después este tribunal decidió el caso del obrero Miguel Parque. Éste también era un estibador que se dedicaba a almacenar carbón de piedra en la bodega de un vapor. Murió de tabardillo (*heatstroke*). Esta corte resolvió:

"...y siendo claro que el obrero, al realizar el trabajo donde encontró su muerte, no podía ni tenía motivo para esperar la desgracia que le ocurrió, pues era un trabajo que durante varios años venía realizando sin recibir daño alguno, tenemos que concluir que la Comisión Industrial no cometió error al resolver que Miguel Parque sufrió un accidente que le provino de un acto o función inherente a su trabajo, ocurrídole en el curso de éste y el cual fué la causa de su muerte." (*Montaner, Admor.* v. *Comisión Industrial,* 54 D.P.R. 722, 731.)

La opinión emitida en el caso de Rafael Díaz Ortiz no contiene una relación detallada de los hechos pero dice: "...Rafael Díaz Ortiz falleció repentinamente en el almacén

336

de Martínez Hnos. y Cía., inmediatamente después de haber realizado esfuerzos para descargar y estibar un número de barriles cuyo peso individual excedía de 300 libras." (54 D.P.R. 798.) Este tribunal dijo:

"El hecho de que el obrero en este caso padeciera de alguna enfermedad crónica—cosa que no se probó concluyentemente—que le hiciera más susceptible de sufrir una lesión que le ocasionara la muerte, no sería por sí solo suficiente para privar de compensación a sus beneficiarios. (Citas.)" (*Montaner, Admor.* v. *Comisión Industrial,* 54 D.P.R. 797, 804.)

Un caso cuyos hechos son distintos pero que demuestra que la tendencia de este tribunal es hacia una interpretación liberal del estatuto es el de Juan Matos. Ese obrero sufrió un ataque de epilepsia mientras trabajaba en la zanja de un cañaveral. Se cayó en la zanja y se ahogó. El Fondo del Estado alegó que la muerte había sido causada por su condición. Está corte se expresó así:

"El espíritu de la 'Ley de Compensaciones por Accidentes del Trabajo' (Ley Núm. 45 de abril 18, 1935) es hacer compensables las lesiones o muertes de obreros como consecuencia de accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste. Las excepciones a dicha regla, enumeradas en la sección 4 de la citada ley, son (*a*) cuando el obrero se causare voluntariamente la lesión; (*b*) cuando el obrero estuviere embriagado y la embriaguez fuere la causa del accidente; (*c*) cuando la lesión ha sido causada por el acto criminal de una tercera persona; y (*d*) cuando la imprudencia temeraria del obrero ha sido la única causa de la lesión. La especificación de los casos en que, por excepción, no puede recobrarse indemnización por un accidente ocurrido en el curso del empleo y como consecuencia del mismo, excluye todas las demás causas que pudieran alegarse en oposición a una reclamación. *Inclusio unius est exclusio alterius. Bonilla* v. *Mitchell,* 51 D.P.R. 126. Si la caída del obrero Juan Matos hubiese sido motivada por su propia negligencia, seguramente el Fondo del Seguro del Estado no hubiera podido interponer la defensa de negligencia contribuyente en oposición a la reclamación. No vemos razón alguna que nos obligue a establecer una diferencia entre la negligencia contribuyente y la condición idiopática del obrero, como causas

determinantes de un accidente, cuando ni una ni otra aparecen incluídas entre las circunstancias que de acuerdo con la sección 4 de la ley (supra) impiden la concesión de una compensación." (*Montaner, Admor.* v. *Comisión Industrial*, 55 D.P.R. 903.)

Ese caso fué seguido en *Montaner* v. *Comisión Industrial y Maldonado,* caso núm. 179, y *Montaner* v. *Comisión Industrial y Rodríguez,* caso núm. 176, ambos decididos en enero 16, 1940 y publicados en 55 D.P.R. 985.

*En su consecuencia, las resoluciones de la Comisión deben ser confirmadas.*

El Juez Asociado Sr. De Jesús no intervino.