José Cordero, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandada; Bull Insular Line, patrono.

Núm. 379.—*Sometido:* Enero 13, 1948. *Resuelto:* Enero 30, 1948.

*Víctor M. Bosch,* abogado de los beneficiarios del obrero aquí recurrente; *Ángel de Jesús Matos, M. Maldonado Pacheco y Aída Casañas Marengo,* abogados del Fondo del Estado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

El 20 de agosto de 1945 José Cordero Pérez trabajaba como ''amantero'' en un vapor que se hallaba junto a uno de los muelles de la Bull Insular Line en San Juan. Allá como a las diez de la noche tuvo que ayudar a otros obreros a colocar una de las ''galeotas'' en la escotilla del vapor. Súbitamente Cordero Pérez se sintió enfermo y murió antes de ser trasladado al hospital. Sus beneficiarios llevaron el caso

ante el Administrador del Fondo del Seguro del Estado y éste declaró sin lugar la solicitud. Más tarde la Comisión Industrial dictó resolución desestimándola y confirmó en todas sus partes la resolución del Administrador. Denegada la reconsideración por ellos solicitada, los beneficiarios acudieron ante nos de conformidad con lo provisto por el artículo 11 de la Ley núm. 45 de 18 de abril de 1935 ((1) págs. 251, 289) según el mismo ha sido enmendado por la Ley núm. 121 de 2 de mayo de 1940 (pág. 729).

Sostienen en su petición que: (a) "La Comisión Industrial erró al declarar que no se ha probado en este caso el esfuerzo extraordinario tal como lo contempla la jurisprudencia de nuestro más alto tribunal así como las de las cortes americanas, en relación con nuestra Ley Sobre Accidentes del Trabajo, para hacerlo compensable;" (b) " . . . al tomar en consideración, como factor básico esencial, la condición idiopática del obrero para determinar el grado o carácter del esfuerzo por éste realizado, esto es, para determinar si dicho obrero realizó un esfuerzo extraordinario que pudiera establecer una relación causal con su muerte;" y (c) " . . . al declarar que la muerte de José Cordero Pérez no ocurrió como consecuencia de un accidente del trabajo." Citan en apoyo de su recurso los casos de *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 330; *Montaner, Admor.* v. *Comisión Industrial*, 55 D.P.R. 900; *Montaner, Admor.* v. *Comisión Industrial*, 54 D.P.R. 121 y *Montaner, Admor.* v. *Comisión Industrial*, 54 D.P.R. 797. Discutiremos conjuntamente los errores señalados.

Un examen de los casos mencionados, así como de los de *Montaner, Admor.* v. *Comisión Industrial*, 54 D.P.R. 722; *Montaner, Admor.* v. *Comisión Industrial*, 53 D.P.R. 197 y *Sucn. París* v. *Comisión Industrial*, 52 D.P.R. 441, que guardan con ellos cierta similitud, no nos convence de que la resolución de la Comisión Industrial deba ser revocada. Es verdad que algunos de esos casos dan la impresión de que es compensable la muerte acaecida a un obrero en el curso

de su trabajo cuando, considerado el estado idiopático del mismo, la labor realizada por éste al momento del fallecimiento equivale a un esfuerzo. Empero, si se examinan con detenimiento se verá que en ellos este Tribunal tomó en consideración no sólo el estado físico del obrero, sino también la clase de trabajo por éste ejecutado y el esfuerzo por él realizado al momento de sorprenderle la muerte, y que bajo las circunstancias en ellos concurrentes el esfuerzo podría considerarse como extraordinario.

De acuerdo con la prueba que desfiló en este caso, en la noche del indicado día el causante de los beneficiarios trabajaba como "amantero" en la cubierta de uno de los vapores de la Bull Insular Line. Su labor consistía principalmente en gritar y avisar a los trabajadores que se encontraban en el muelle, a fin de que éstos estuvieran preparados para recibir la carga. Trabajó de cuatro a seis de la tarde, hora ésta última en que fué a comer, y a las siete de la noche reanudó su trabajo. Como a las diez el capataz le indicó que debía ayudar a seis obreros más a colocar una galeota o plancha sobre la escotilla en que se realizaba la labor. La galeota pesaba más de una tonelada y era levantada por un aparato mecánico y al estar como a diez o doce pulgadas de la escotilla era empujada hasta que se hallara directamente sobre la misma, dejándose bajar en ese momento sobre ésta. Mientras dichos siete obreros y el capataz empujaban la galeota, el finado obrero se sintió enfermo y poco después murió.

Uno de los testigos presentados por los beneficiarios ante la Comisión declaró que Cordero Pérez no tuvo que realizar esfuerzo alguno, mientras que el capataz, ofrecido también por ellos, testificó que Cordero Pérez estaba acostumbrado a hacer esa clase de trabajo, que tenía que realizarlo en adición a sus deberes como "amantero" y que a su juicio Cordero Pérez tuvo que realizar un esfuerzo, indicando además que él mismo tuvo que pegar la mano "porque hay hombres que no valen en realidad para la fuerza".

Para resolver el caso debemos considerar no sólo la prueba anterior, sino también el testimonio de los peritos médicos que declararon en el caso. El Dr. Jesús M. Quiñones dijo que la probable causa de la muerte fué "patología, arterias coronarias", y que según el diagnóstico el finado padecía de "estenosis de las coronarias, avanzado debido a arterioesclerosis, y edema del pulmón"; que "la causa patológica no necesitaba ningún esfuerzo extraordinario para producirle la muerte, porque era en sí, tenía justificación para haberse muerto el obrero sin esfuerzo ninguno extraordinario"; que "era tan avanzada la condición de su enfermedad, estaban tan dañadas las arterias que él se hubiera quedado muerto en cualquier momento, dormido o sentado." El Dr. Jeramfel Cordero manifestó que la causa inmediata de la muerte de Cordero Pérez lo fué "el edema pulmonar agudo, pero éste a su vez secundario a la estenosis de las arterias coronarias"; que en estos casos ocurre la muerte en muy variadas circunstancias: desde el absoluto descanso durante la noche al descanso relativo de una digestión por una comida abundante. También declaró que si la carga tuvo que ser movida entre seis obreros para colocarla sobre un plano, para ponerla en otro punto distinto, consideraba que era un esfuerzo extraordinario; pero que si por el contrario la carga se movía en el aire, consideraba que el esfuerzo no podía clasificársele como de extraordinario.

En vista de la declaración anterior del Dr. Cordero, fué llamado nuevamente a declarar el testigo Tomás López. Con su testimonio quedó definitivamente aclarado que en el momento en que el obrero Cordero Pérez sintió el dolor que precedió a su muerte él empujaba, en unión a otros siete hombres, la galeota que estaba en el aire.

La Comisión Industrial apreció la prueba y llegó a la conclusión de que el causante de los aquí peticionarios no realizaba esfuerzo extraordinario alguno al momento de su

frir el accidente que le produjo la muerte. Al así hacerlo concluyó que el mismo no era compensable.

██ En nuestra opinión, la Comisión interpretó acertadamente nuestras decisiones. En casos de esta naturaleza no basta que la muerte del obrero sea producida por un accidente que dada su condición idiopática, equivalga a un esfuerzo. Para que el accidente sea compensable es menester que el esfuerzo equivalga a uno extraordinario o inusitado.

Conforme indica el tratadista Schneider en el tomo 4 de su obra "Workmen's Compensation", tercera edición, sección 1240, pág. 386, son muchos los estados que han resuelto que "no se concederá compensación cuando el obrero padece de una enfermedad crónica del corazón que ha llegado a tal extremo que la muerte puede sobrevenirle en cualquier momento y por cualquier esfuerzo, y le sorprende mientras está realizando la labor ordinaria de su empleo." Véanse también las secciones 1302 y 1332, págs. 468, 473, 569 y siguientes de la misma obra.

En *Balaban* v. *Severe,* 43 Atl.2d 543 (Pa. 1945) se resolvió, copiando del sumario, que "para que la muerte de un obrero constituya un 'accidente' compensable debe demostrarse que el trabajo a que éste se dedicaba al momento del accidente era de naturaleza distinta y requería materialmente mayor esfuerzo, riesgo o exposición que aquél que de ordinario realiza, de forma que se justifique la conclusión de que la mayor severidad del mismo fué la causa de la muerte y no que ésta meramente coincidió con su enfermedad preexistente." Véanse asimismo *Hamer* v. *Rishel,* 24 Atl.2d 664 (Pa., 1942) y *Rowe* v. *Goldberg Film Delivery Lines,* 72 P.2d 432 (Ariz., 1937). Estamos de acuerdo con el criterio antes expresado.

*No habiéndose cometido por la Comisión demandada ninguno de los errores señalados, debe confirmarse la resolución recurrida.*