GUILLERMO ATILES MORÉU, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; ANDRÉS NEGRÓN RAMOS, obrero.

Núm. 394.—*Sometido:* Diciembre 7, 1948. *Resuelto:* Marzo 11, 1949.

*Ángel de Jesús Matos, M. Maldonado Pacheco* y *Aída Casañas Marengo,* abogados del recurrente; el obrero no compareció.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El Administrador del Fondo del Seguro del Estado solicita la revisión de la resolución dictada por la Comisión Industrial en el caso del obrero Andrés Negrón Ramos. Las conclusiones de hecho a que llegó la Comisión son las siguientes:

"Este obrero de 43 años de edad, trabajaba desde 1936, en la Cervecería Corona, como ayudante de tonelero, encargado de apretar barriles, desarmarlos y embrearlos. Además de esta labor, y durante 5 ó 6 meses cada año, tenía también que barnizar el interior de los tanques y neveras en que se envejece la cerveza, y estos tanques tienen un tamaño de 20 pies de alto por 10 de fondo, y como única ventilación están provistos en la parte de abajo, con una puertecita cuadrada, de 18 pulgadas por cada lado, por donde entra y sale el pintor y en la parte de arriba, con un agujero que se cierra con un tapón, pero éste se quita cuando el pintor está en el interior del tanque realizando su labor, la que empieza por un raspado general de las paredes que va a barnizar.

"Después del raspado antes mencionado, se usa una clase de '*barniz piedra*' que hay que disolver a fuerza de vapor, en un caldero, operación que se hace dentro del mismo tanque, y una vez disuelto, se mete la brocha, que al efecto se usa dentro del caldero, y así mojada en barniz caliente, se aplica a las paredes, y en dicha operación se bota mucho humo que queda dentro del tanque, escapando o saliendo parte del mismo por las dos únicas aberturas que ya antes hemos mencionado.

"Después de esa operación, y ya secado el barniz, se pasa por las paredes una lámpara de 3 galones de gasolina, para alijarlas y pulirlas, y tanto en ésta como en la operación anterior se suda mucho, por lo que el pintor tiene que salir fuera del tanque cada hora más o menos para coger aliento.

"Allá por el año 1946, entre el mes de septiembre y diciembre, cuando ya el obrero llevaba cerca de 8 años en esta labor, en la forma y manera antes descrita, empezó a sentirse con ahogos y fatiga y tosía cuando salía de los tanques a coger fresco, pero no le dió mayor importancia a esto, y a veces trataba esta molestia, con un palo que se tomaba, pero siguieron apretando esos síntomas, y ya casi a fines del año 1946, tuvo que recluirse en el Hospital Muni-

cipal, por el mes de octubre, donde le atendió el Dr. Marchand, quien atribuyó su dolencia al polvo y al humo que aspiraba en su trabajo.

. . "Quedó probado que este obrero, con anterioridad a su accidente, padecía de catarro, pero de los exámenes que le practicaba la Unidad de Salud Pública, del Departamento de Sanidad, todos los años, según lo ordenaba el patrono, así como de dos radiografías que le tomaron en el Hospital Municipal, salió bien de todo, pero en dos ocasiones, una de ellas, en septiembre de 1947 [debe decir 1946], lo curaron de asma en el Hospital Municipal; que desde el mes de octubre de 1947, [ídem] fué cuando realmente sintió la agravación de su dolencia o condición asmática, pero estuvo hasta diciembre 4, sin notificar su caso al Fondo, porque creía que el mismo estaba dentro de la ley, y acudió entonces en primera instancia al Hospital Municipal.

"Se probó además, que otro obrero llamado Alejandro Matos de 58 años de edad, y quien estuvo como año y medio ayudándole al obrero lesionado en este caso en la misma labor, tuvo que abandonarla porque se sintió el corazón afectado, y desde entonces se cansa mucho, sin saber si lo que tiene es asma o es otra cosa, y además, contribuyó también a su retiro el hecho de que había que estar siempre dentro de un fuego.

"Se hizo constar que no se usaba máscara o careta de clase alguna por el obrero cuando realizaba su trabajo en los tanques." (Corchetes nuestros.)

Después de analizar extensamente la prueba médica, resolvió el caso a favor del obrero diciendo:

"No hay controversia alguna entre los médicos de ambas partes en cuanto a la dolencia que aqueja a este obrero, asma bronquial, así como su carácter hereditario, y por lo tanto en forma alguna puede dicha dolencia contraerse a no ser por herencia. Es también cierto como sostiene el Administrador que en nuestra Ley sobre Compensaciones a Obreros no se incluye dicha dolencia como enfermedad ocupacional, pero a nuestro juicio la cuestión ahora a resolverse es si dada esa condición idiopática del obrero, que en nada le afectaba en su labor rutinaria como ayudante de tonelero, según consta del informe patronal rendido al Administrador (Exhibit 1-E) pudo o no agravarse, mientras este obrero trabajaba durante cerca de diez años y por un período de cinco o seis meses al año en la otra labor adicional encomendádale o sea la de barnizar los tanques neveras

en que se envejece la cerveza fabricada por su patrono, y ya hemos descrito anteriormente la forma y manera en que esta última labor se realizaba. . . . .

''¿En qué consistió esta agravación? Nos inclinamos a aceptar como razonablemente probable, la teoría sustentada por el Dr. Vázquez Milán, sobre todo tomando en cuenta el alcance e interpretación de nuestra Ley sobre Accidentes del Trabajo, en casos similares a éste, tanto dentro de la jurisprudencia de nuestro foro como la de algunas cortes del continente, porque no hay duda alguna que los humos, gases, etc., que estuvo inhalando por tanto tiempo el obrero mientras realizaba su labor en los tanques nevera, en la forma antes expuesta, son factores alergénicos al asma y produjeron una constante irritabilidad que empezando por catarro y flema en el pecho culminó en una sensitividad específica del obrero a dichos humos y gases que provocaron la excitación de los ataques asmáticos que no empezaron a manifestarse hasta fines del año pasado y adquirieron la proporción que ahora presenta que no es la de un estado asmático atenuado que en nada le afectaba en sus labores diarias, sino un estado avanzado de asma bronquial que por la constante repetición y frecuencia de los ataques inherentes a esta dolencia, lo incapacitaban grandemente en los momentos actuales para realizar trabajo alguno en qué ganarse la vida, y en estas condiciones tenemos que convenir que el factor enfermedad ocupacional en nada debemos tomarlo en cuenta, porque en este caso y dentro de la prueba evacuada, lo que se ha demostrado es la ocurrencia de un accidente sufrido y como consecuencia del trabajo que este obrero estuvo realizando en la factoría de su patrono hasta fines del año pasado.''

En apoyo de su decisión la Comisión citó los casos de *Vogt* v. *Ford Motor Co.*, 138 S. W.2d 684 y *Atiles Moréu* v. *Comisión Industrial de Puerto Rico*, 66 D.P.R. 791. Expedimos el auto para revisar esta resolución.

■■ La prueba que tuvo ante su consideración la Comisión fué suficiente para demostrar que la enfermedad del obrero en este caso se circunscribió a un determinado período corto de tiempo —dos o tres semanas antes de haber sido llevado al hospital— y que la misma fué consecuencia directa del trauma repetido que recibió el obrero en sus bronquios, al trabajar bajo las condiciones desfavorables en que

lo hacía con motivo de los gases y del humo que despedía el barniz derretido y que él aspiraba mientras trabajaba.

Aun cuando los peritos médicos declararon que el asma bronquial es una enfermedad hereditaria, uno de ellos, el Dr. Vázquez Milán, afirmó que "El asma *per se* puede tener el factor hereditario, pero la alergia ésa se adquirió trabajando en el cuarto encerrado, eso no es hereditario" y sostuvo que fueron los gases y el humo que aspiraba los que produjeron los ataques de asma de que sufrió y sufre el obrero.

Aceptando que el obrero padecía de asma, en forma latente, y aceptando además, que el trabajo a que se dedicaba no fué la causa del asma, no tenemos duda de que fué dicho trabajo el causante de que el obrero adquiriera la alergia —al humo y a los gases—que ocasionó que el asma se manifestara activamente, incapacitándolo para el trabajo. Esta fué la conclusión a que llegó la Comisión, basándose precisamente en la declaración del Dr. Vázquez Milán. Si, como se dice en 1 Honnold *on Workmen's Compensation*, 286-8, " ... En la palabra accidente siempre hay un elemento de lesión" y que " ... si la lesión es causada por una enfermedad es claro que el peticionario no tendría derecho a recompensa alguna", en el caso de autos existe el elemento de lesión—el trauma repetido causado en los bronquios del obrero por los gases y el humo—y esa lesión no fué causada por la enfermedad—el asma hereditaria latente—sino por la alergia que adquirió trabajando.

Para que una lesión sufrida por un obrero, en el curso de su empleo y como consecuencia del mismo, por accidentes que provengan de cualquier acto o función inherente a su trabajo, sea compensable, no es requisito indispensable que el impacto o el trauma recibido lo sea en un momento específico o en una sola ocasión. Y específicamente en casos de enfermedadss contraídas o agravadas con motivo de haber inhalado el obrero polvo, humo o gases.

En el caso de *Beaver* v. *Morrison-Knudsen Co.*, 41 P.2d 605, (Idaho, 1935) se resolvió que la incapacidad resultante de haberse agravado una tuberculosis latente, debido a haber inhalado el obrero polvo de sílice durante su empleo, constituyó un accidente no obstante no haberse podido especificar el día o el mes en que la lesión fué sufrida. Los hechos fueron los siguientes: En 1928, cuando el obrero empezó a trabajar tenía una tuberculosis latente (*arrested case of tuberculosis*) pero estaba fuerte y saludable; en octubre de 1931 tenía "tuberculosis activa" en estado avanzado e incurable. El polvo en que trabajaba el obrero e inhalaba durante tres o cuatro meses durante cada uno de los años 1928, 1929, 1930 y en febrero de 1931 contenía de 80 a 85 por ciento de sílice. La corte dijo que la pregunta a contestar era: "La inhalación del polvo de sílice precipitó o revivió la tuberculosis del reclamante y, si fué así, ¿constituyó un accidente?" Después de citar el testimonio médico presentado en el caso, la corte concluyó, citando autoridades, que había ocurrido un accidente. Se solicitó la reconsideración alegándose que para que existiera un accidente, el mismo tenía que "haber ocurrido como consecuencia de un hecho susceptible de haber sido identificado en cuanto a tiempo, sitio, y circunstancias." Al resolver la cuestión, la corte admitió que existía "aparente autoridad para la contención hecha por cada parte." Empero, después de analizar la prueba y citar autoridades, resolvió que el obrero sufrió un accidente en el curso de su empleo. Es de notarse que en dicho caso la Comisión Industrial había denegado la compensación, pero la corte resolvió que había incurrido en un error de derecho al aplicar la ley a los hechos probados. En el curso de la opinión la corte dijo:

"No nos hemos olvidado del hecho de que las palabras 'lesión' (*injury*) y 'accidente' (*accident*) no son términos sinónimos según se usan en la ley bajo consideración. Los hechos de este caso requieren una distinción en el significado de estos dos términos. En las

circunstancias que aquí confrontamos, no creemos esencial para decidir el caso que la corte afirme o traté de resolver cuándo y dónde la lesión y el resultado se unieron en un 'accidente' consumado. (Cita.) Todos los accidentes son precedidos por una causa; en algunos casos esa causa puede haber operado instantáneamente y en otros puede haber estado operando durante días, meses y años, y por último el 'accidente' ocurre. . ."

Esta misma interpretación del significado y alcance de la palabra accidente, según se usa en las leyes sobre compensaciones por accidentes del trabajo, ha sido aplicada a casos en que el obrero padecía de asma o ésta se manifestó o agravó con motivo de haber respirado polvo, humo o gases.

En el caso de *Vogt* v. *Ford Motor Co.*, 138 S. W.2d 684 (Mo., 1940), citado por la Comisión Industrial en la resolución que revisamos, se resolvió que asma adquirida debido a haber estado el obrero trabajando durante cuatro meses expuesto y respirando polvo de la pintura usada para pintar automóviles, constituía un accidente compensable. Un médico declaró en dicho caso que "Vogt tenía asma bronquial alérgica; que la predisposición a tener asma bronquial era inherente en él desde la niñez; que por la historia del caso, trabajar bajo las condiciones en que lo hacía el obrero fué, en su opinión, la causa de él tener asma bronquial..." La corte, después de rechazar las teorías de que el obrero hubiera contraído la enfermedad antes de estar empleado por el patrono—por haberse probado, igual que en el caso de autos, que nunca antes había padecido de asma—o que dicha enfermedad fuera una ocupacional—porque el asma no lo es—llegó a la conclusión que la única cuestión a determinar era si el asma bronquial que tenía el obrero fué consecuencia de un accidente y resolvió, a la pág. 687:

". . . Su condición no puede atribuirse a alguna causa no asociada con su empleo, porque aun cuando alérgico a contraer el asma, la alergia latente nunca fué despertada hasta después de haber sido empleado en enero de 1935. No puede atribuirse a la ocupación porque no es una enfermedad que hombres en dicha ocupación están

sujetos a contraer; no es una enfermedad que se sepa sea incidental a su clase de trabajo en particular. Por tanto, es el resultado de un accidente o tenemos una situación bajo la Ley de Compensaciones de Obreros donde un obrero contrae una enfermedad debido a y en el curso de su empleo y sin embargo, no es compensable. Tal no fué la intención del legislador. Se nos dice que un accidente es 'un suceso inesperado o imprevisto que ocurre súbita y violentamente, con o sin falta humana y que produce al momento síntomas objetivos de una lesión.' (Cita.) Fué ciertamente inesperado e imprevisto. Vogt no pudo esperar ni prever que imbuída en su sistema físico había una alergia durmiente a la clase de polvo y humo de este empleo. Debemos siempre tener en mente que la negligencia no cabe en este caso, el hecho pudo haber ocurrido con o sin falta humana. Consecuentemente le sobrevino sin esperarlo ni preverlo; por tanto, ¿fué súbita y violentamente? Aunque la definición estatutaria de accidente dice que es 'un suceso', no encontramos que ninguna corte ha interpretado que signifique una sola ocurrencia; en otras palabras, un accidente puede consistir de un suceso, una sola ocurrencia o puede consistir de un suceso, una serie de ocurrencias que resulten en lesión; y asimismo sería una restrictiva interpretación del estatuto decir que 'súbito' quiere decir instantáneo.''

Después de citar autoridades la corte resolvió que siendo una cuestión de hecho si el obrero Vogt sufrió un accidente y que habiendo la convicción en la afirmativa y aun cuando la prueba era contradictoria, procedía confirmar su resolución.

En el caso de *Murch–Jarvis Co.* v. *Townsend,* 193 S. W.2d 310 (Ark., 1946), hubo prueba médica contradictoria en cuanto a si el empleo del obrero—excavador en una fundición de zinc—y su exposición al polvo y gases le causaron su padecimiento bronquial o agravaron una condición preexistente enfermiza. Un médico había declarado que el obrero padecía de ''sinusitis crónica, bronquitis crónica, hipertensión arterial y nefritis vascular crónica.'' Otro dijo que ''de asma bronquial con bronquitis asociada, hipertensión y enfermedad del corazón.'' La Comisión resolvió que el obrero sufrió una lesión por accidente debido a haber inhalado el polvo y los gases en el curso de su empleo, cuya lesión agravó una situación preexistente y resultó en una in-

capacidad total, aunque temporera. En el curso de su opinión, la Corte Suprema, además del caso de *Vogt* v. *Ford Motor Co.*, supra, citó los de *Lea Mathew Shipping Corp.* v. *U. S. Employees Comp. Com. D. C.*, 56 F.2d 860; *Dove* v. *Alpena Hide & Leather Co.*, 164 N.W. 253; *Herron Lumber Co.* v. *Neal*, 172 S. W.2d 252; *McGregor & Pickett* v. *Arrington*, 175 S. W.2d 210; *Harding Glass Co.* v. *Albertson*, 187 S. W.2d 961, y al confirmar la decisión de la Comisión resolvió que el obrero había sufrido un accidente.

Al mismo efecto en el caso de *Batesville White Lime Co. et al.*, v. *Bell*, 205 S. W.2d 31, (Ark., 1947) se resolvió que una lesión al corazón de un trabajador que había inhalado polvo excesivo durante veintitrés años, constituía un accidente. Dijo la corte:

"Nada hay en la prueba en este caso que justifique la conclusión que la lesión en el corazón del apelado debido a haber respirado la excesiva cantidad de polvo, fué una que él pudo razonablemente esperar o anticipar. Ciertamente fué accidental en tanto en cuanto a él concernía; *y hay bastante autoridad para sostener que una lesión, no necesariamente el resultado de un solo impacto, sino causada por una continua irritación en alguna parte del cuerpo por substancias extrañas puede propiamente decirse que es accidental."* (Bastardillas nuestras.)

Entre otros casos dicha corte citó el de *McNeely* v. *Carolina Asbestos Co.*, 174 S. E. 509, 512, en el que se resolvió que "asbestosis pulmonar" producida por haber el obrero inhalado polvo de asbestos durante cinco meses era una "lesión por accidente", compensable, diciendo la corte:

". . . A menos que tratemos de limitar o extender palabras o de pasar hilos gruesos por los ojos de agujas pequeñas, parecería obvio que nuestra ley no trató de limitar compensación a casos donde la lesión comenzó y se completó dentro de estrecho límite de tiempo, sino que usó la expresión 'lesión por accidente' en su concepto de sentido común diario como refiriéndose a una lesión producida sin el designio o la expectación del trabajador."

En el caso de *Webb* v. *New Mexico Pub. Co. et al.*, 141 P.2d 333 (N. M., 1943), se hace un estudio extenso en cuanto

a la cuestión de "tiempo" en relación con un "accidente", bajo leyes de esta naturaleza, en un caso en que también estaba envuelta la alergia que tenía un obrero a una clase de jabón cuyo uso durante seis meses le ocasionó lesiones en las manos y resolviéndose que constituía un accidente el recibir dicha lesión aunque producida gradual y progresivamente durante un período de varios meses. Entre otros, se citó extensamente de los casos de *Vogt* v. *Ford Motor Co.* y *McNeely* v. *Carolina Asbestos Co.*, supra.

Tanto los casos citados, como el de autos, caen en la categoría de aquéllos en que, existiendo una enfermedad previa, latente, el obrero debe tener derecho a compensación por todas las consecuencias atribuíbles a la lesión o lesiones que con motivo del accidente aceleró, revivió o agravó dicha enfermedad. En el presente, el obrero tenía el asma en estado latente y los gases y el humo que forzosamente tenía que aspirar, le causaron el trauma repetido en sus bronquios, y en esto consiste el accidente, habiendo sido esta alergia a los gases y el humo lo que aceleró los ataques de asma, agravó su enfermedad y lo incapacitaron para el trabajo.

El caso de *Atiles Moréu* v. *Comisión Industrial,* supra, y la cita de Horovitz que en él se hace, son aplicables al de autos. Cierto que la cita de Horovitz se refiere a si determinadas enfermedades surgieron o no en el curso del empleo, pero éste es sólo uno de los factores a considerar en estos casos. Dichos factores son si hubo una lesión como consecuencia de un accidente y si éste surgió en el curso del empleo y como consecuencia del mismo.

Como dice el propio Horovitz a la pág. 93 de su obra "Horovitz on Workmen's Compensation":

". . . . . . . .

"El probar que un obrero recibió una lesión personal por accidente no termina [settle] la cuestión. En adición debe probar que 'surgió de y en el curso del empleo.' "

Anteriormente ya se había expresado el mismo autor diciendo, a la pág. 91:

"*. . . . . . . .*

"Aun enfermedades pueden constituir lesiones accidentales, aunque algunas veces se dice que surgen accidentalmente de lesiones."

Y a la pág. 92:

"*. . . . . . . .*

"Aun cuando el factor 'repentino' de la ocurrencia en el caso [de accidente] es usualmente un requisito, una dilación de horas, días y aun meses no es necesariamente fatal, e. g., pulmonía como consecuencia de corrientes de aire frío, o un reumatismo subagudo sacando agua, o una dilación mayor *si es debido a una 'serie de traumas' o rasguños. . .*" (Bastardillas nuestras.)

Y en las notas cita el caso de *Webb* v. *New Mexico Pub. Co. et al.*, supra.

■ Son muchos los casos parecidos o similares resueltos a favor de los obreros en una interpretación liberal de estas leyes sobre compensación por accidentes del trabajo, que es la que debe prevalecer. Véanse las monografías en 6 A.L.R. 1466; 23 A.L.R. 335; 62 A.L.R. 1460; 90 A.L.R. 619 y 97 A.L.R. 1412. Y especialmente debe ser así cuando, como en el presente caso, la prueba pericial justifica la conclusión a que llegó la Comisión Industrial al fallar a favor del obrero.

*La resolución de la Comisión debe ser confirmada.*

Opinión disidente emitida por el Juez Asociado Sr. Snyder, en la cual concurre el Juez Asociado Sr. Marrero.

No estoy de acuerdo con la opinión de la mayoría. Acepto *arguendo* que el asma del obrero se agravó durante un período de tiempo debido a las condiciones en que trabajaba. Por consiguiente, su enfermedad fué causada por el trabajo. Pero nuestra Ley no compensa todas las enfermedades provenientes del trabajo de los obreros. Provee compensa-

ción solamente si en el curso de su empleo recibió lesiones a causa de un *accidente* o contrajo una de las enfermedades ocupacionales enumeradas en la Ley.

La dificultad en este caso emana del hecho de que la Asamblea Legislativa no ha incluído el asma entre las enfermedades ocupacionales. La opinión de la mayoría soslaya esta dificultad resolviendo que en este caso ocurrió un ''accidente''. Al así hacerlo, dan a dicha palabra un alcance que nunca antes le dí yo. El resultado práctico de esto es que ahora tenemos una nueva enfermedad ocupacional—el asma—inyectada en nuestra ley por el Tribunal.

No me aventuro a predecir dónde el Tribunal trazará la línea divisoria en casos futuros. Para mí el razonamiento de este caso nos obiga a resolver en casos futuros que todas las enfermedades atribuíbles al empleo, son compensables bajo la teoría de ''un accidente'', a pesar de no estar incluídas en la lista de enfermedades ocupacionales establecidas por el poder legislativo.

So pretexto de interpretar liberalmente el estatuto, que se titula ''Ley de Compensaciones por *Accidentes* del Trabajo'', el Tribunal lo ha convertido en uno de seguro de vida y de salud. Creo en esa clase de seguro. Ojála que todo obrero en Puerto Rico estuviera cubierto por el mismo. Pero no tenemos derecho a invadir el campo legislativo y establecer un seguro de salud cuando la Asamblea Legislativa ha creído conveniente conceder tan sólo el seguro por accidentes.

Todos tenemos instintos humanitarios, aunque quizá en diversos grados. Desearía poder rendirme a la simpatía que siento por este obrero que contrajo asma como resultado del empleo. Pero la Asamblea Legislativa no ha provisto para casos como éste. Tampoco el Fondo del Estado ha cobrado primas a los patronos para esta clase de riesgo. Pudiera ser que estemos abriendo la puerta a un sinnúmero de casos basados en esta teoría o en una similar. Si el

Fondo quiere evitarse ir a la quiebra, debe aumentar las primas con el fin de administrar una Ley que ha sufrido una metamorfosis por fíat judicial. A la larga, la comunidad entera, mediante el aumento en las primas, será la que pague la ampliación hecha por el Tribunal a la Ley para que ésta incluya, bajo la teoría de accidentes, enfermedades ocupacionales que no aparecen enumeradas en la misma. No me opongo a este resultado. Pero no encuentro disposición alguna en la ley en qué poder basarlo correctamente. *Cf. Quintero* v. *Comisión Industrial*, 67 D.P.R. 960.

Considero siempre provechoso leer los casos de otras jurisdicciones. Pero algunos de los casos sobre esta cuestión fueron resueltos bajo estatutos que solamente requieren "lesión" al obrero más bien que "accidente". Horovitz *on Workmen's Compensation*, pág. 84, *et seq.* Y otros están de acuerdo con mi criterio. Véase, por ejemplo, *Gabbard* v. *Proctor & Gamble Defense Corporation*, 201 S. W. 2d 651 (Tenn., 1947). En el análisis final, lo importante para nosotros no es lo que otras cortes hayan resuelto, sino lo que la Asamblea Legislativa de Puerto Rico, teniendo en mente las condiciones locales, quiso decir con el lenguaje que empleó en la Ley.

El Tribunal cometió idéntico error en *Atiles* v. *Comisión Industrial*, 66 D.P.R. 791, en el cual yo no participé. En consecuencia, dicho caso debiera ser revocado.(¹)

Yo revocaría la resolución de la Comisión Industrial y dictaría sentencia desestimando la petición del obrero.

_____

(¹)La cita de Horovitz, supra, pág. 147–8 del caso de *Atiles* a las págs. 795–6, se refiere solamente a la cuestión de relación causal entre la enfermedad y el trabajo del obrero. No sostiene el resultado a que se llegó en el caso de *Atiles;* es decir, que el aspirar polvo durante cierto período constituye un "accidente".