Rafael de J. Cordero, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* La Comisión Industrial de P. R. Etc., recurrida; y Dulcilio Martínez Molina, obrero lesionado.·

Núm. 272.—*Sometido:* Noviembre 8, 1943. *Resuelto:* Noviembre 30, 1943.

*Hon. Procurador General Interino M. Rodríguez Ramos* y *G. Benítez Gautier, Procurador General Auxiliar,* y *Angel de Jesús Matos, Joaquín Correa Suárez* y *Joaquina Pérez Cordero,* abogados los tres últimos del Fondo del Estado, abogados todos del recurrente; *P. Santos Borges,* abogado del obrero lesionado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Dulcilio Martínez Molina informó un lunes, que mientras trabajaba el sábado anterior para un patrono asegurado, "un compañero me dió involuntariamente con un pedazo de madera" en el lado izquierdo del cuello. Dos días después fué examinado por el Dr. Oliveras, quien encontró que tenía un recrecimiento glandular bajo la piel al lado izquierdo del cuello. Para esa fecha no existía indicio alguno de traumatismo en el cuello. Un análisis microscópico de tejidos de esta inflamación glandular reveló que Martínez sufría del mal de Hodgkin. El obrero fué sometido a tratamiento por orden del Administrador del Fondo del Seguro del Estado, falleciendo más tarde a causa de esta enfermedad. Antes de morir, la Comisión Industrial resolvió que Martínez estaba total y permanentemente incapacitado como resultado de un accidente ocurrídole en el curso de su empleo. A solicitud del Administrador expedimos el auto para revisar dicha decisión, así como la resolución de la Comisión declarando sin lugar la moción de reconsideración.

Es de notarse en primer término que los dos doctores que declararon, incluyendo al Dr. Oliveras quien declaró en favor de Martínez, estuvieron contestes en que el mal de Hodgkin, que comienza con una inflamación glandular general seguida de un recrecimiento anormal de las glándulas linfáticas, no puede ser causado simplemente por traumatismo. El Dr. Oliveras se expresó como sigue en contestación a preguntas formuladas por el abogado del obrero:

"R. Limitándonos estrictamente a los conocimientos científicos modernos, yo podría decir que el traumatismo en nada tiene que ver con la causa de este mal de Hodgkin.

"..

"P. ¿Luego usted no puede afirmar que ésa no haya sido la causa?

"R. Lo que se ha estudiado es que el traumatismo no parece ser la causa del mal de Hodgkin. No se puede creer que el traumatismo cause el mal de Hodgkin. Se ha estudiado ya eso.

"..

"¿Usted no cree que teniendo en cuenta las circunstancias de las preguntas, de todas esas declaraciones, que no hubo ni un solo síntoma de la enfermedad antes de recibir el golpe y que él haya recibido ese golpe aquí en la región cervical no fuese una de las causas que produjo eso?

"R. Yo diría que fué una coincidencia."

La Comisión admitió que había cometido error en su decisión original resolviendo que la enfermedad había sido causada por el alegado accidente. Su resolución denegando la moción de reconsideración del peticionario dice en parte como sigue:

"Existe un hecho real y positivo, cual es, que la parte más susceptible del cuerpo humano para manifestarse la enfermedad Hodgkin es la región cervical, y habiendo el obrero recibido el trauma en esa parte y considerando que nunca antes de ese momento el obrero había sufrido de enfermedad alguna, siendo un hombre joven, saludable y fuerte, que según se manifestó en la vista pública no había sufrido de inflamaciones ni de infecciones, es lógico y natural sostener, que si existía la enfermedad con anterioridad al accidente, ésta pudo haber sido acelerada con el golpe.

"Existe a nuestro juicio un error en la parte dispositiva de nuestra resolución de enero 10 de 1943, el cual deseamos corregir y es que allí dijimos al terminar dicho párrafo que la enfermedad fué motivada por el accidente sufrido en octubre 25 de 1941, cuando debimos haber dicho que fué acelerada por el trauma."

La única prueba de que el accidente en cuestión ocurriera fué la del propio obrero. En su resolución original la Comisión manifestó que "De si hubo o no el accidente cualquiera duda que pudiéramos tener nos la desvanecería el in-

forme médico de alta suscrito por el doctor Meléndez que dice al calce: 'dado de alta de la *contusión* sufrida en el cuello'. Esa es una admisión que hace el Fondo del Estado, la cual nos lleva a la conclusión de que efectivamente hubo un trauma. Eso por sí solo nos releva de prueba.''

Arguye el Administrador en el presente caso que este informe médico no pudo ser considerado por la Comisión toda vez que estaba adherido al informe del caso en poder del Administrador, informe que nunca fué presentado en evidencia y el cual, por lo tanto, nunca tuvo oportunidad de refutar y explicar. No consideraremos este alegado error por razones que expondremos más adelante.

Asumimos que ocurrió un accidente como el descrito por el obrero. Sin embargo, no podemos encontrar prueba alguna en el récord sobre la cual pudiese la Comisión haber basado su resolución. Los dos doctores que declararon estuvieron contestes en que el accidente no pudo ser la causa de la enfermedad. No obstante, ésta fué la única teoría expuesta por el abogado del obrero para sostener su caso.[1] Y Martínez insistió, a través de toda su declaración, en que gozaba de perfecta salud con anterioridad al accidente y nunca tuvo síntomas del mal de Hodgkin antes de ser golpeado por el pedazo de madera, inmediatamente después de lo cual ''noté que se me hizo una bolita aquí . . .''.

La Comisión, a pesar de reconocer el error fundamental cometido en su resolución original, optó por sostener su conclusión anterior basada en una teoría del caso que no había

[1] El abogado del obrero hizo una declaración inicial que dice en parte como sigue:

''Señor Comisionado, este obrero, el día 25 de octubre de 1940 sufrió un accidente a virtud del cual recibió un golpe en la región cervical izquierda. Fué tratado y dado de alta en diciembre 3 como curado. Mientras el obrero estuvo en tratamiento, de octubre de 1940 a diciembre de 1941, se desarrolló en él una enfermedad linfática que, según tengo entendido, se conoce como el mal de Hodgkin, que es una enfermedad de las linfas del cuerpo. Nosotros solicitamos que en esta vista pública se resuelva que la enfermedad contraída por él después del accidente es una causa del accidente y dadas las circunstancias de que esa enfermedad es como es, que se le fije una incapacidad total y permanente en este caso.''

sido expuesta por el obrero. Sin embargo, si existiese alguna prueba que sostuviera la última resolución de la Comisión, aun cuando fuera en contradicción de la propia declaración del obrero, no intervendríamos con dicha decisión. Pero el récord guarda absoluto silencio sobre ese particular. Únicamente encontramos una sola pregunta sobre dicho extremo hecha al perito del obrero. La pregunta y la contestación fueron las siguientes:

"P. Vamos a asumir lo siguiente: suponiendo que ésta hubiera sido una enfermedad, no que lo admitamos, que fuera una enfermedad que él tenía latente, pudo el traumatismo echársela hacia afuera?

"R. Si el traumatismo cayó sobre una glándula enferma, pudo traerle una inflamación y pudo acelerar el recrecimiento de la glándula, si viene el golpe viene la inflamación."

Dicha contestación no es por sí sola, desde luego, base suficiente para sostener la decisión de que como cuestión de hecho Martínez ya sufría del mal de Hodgkin al ocurrir el accidente, y que este último aceleró el progreso de dicha enfermedad. Los hechos de este caso por tanto no justifican la reclamación de acuerdo con la regla establecida en *Colón* v. *Comisión Industrial*, 59 D.P.R. 850, 1, 2, y en *Simpson Co.* v. *Industrial Com.*, 337 Ill. 454, 9 (1929). Los hechos en este caso se asemejan más a los del de *Hale* v. *State Highway Com.*, 262 Ky. 753 (1936).

*La resolución de la Comisión Industrial será revocada.*