Luis A. Archilla Laugier y Pedro Soto, peticionarios y apelados, *v.* Comisión Hípica Insular, Etc., querellados y apelantes.

Núm. 10333.—*Sometido:* Febrero 8, 1951. *Resuelto:* Abril 19, 1951.

426

*Diego O. Marrero,* abogado de los apelantes; *Luis A. Archilla Laugier, pro se,* y *José E. Bosch Roqué,* abogados de los apelados.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Los aquí apelados acudieron en 25 de enero de 1950 ante el Tribunal de Distrito de San Juan con una petición de *mandamus.* Alegaron que desde hace varios años han venido disfrutando de licencias de dueños de caballos de carreras expedidas por la Comisión Hípica Insular, las que les han sido renovadas anualmente, previa radicación de solicitudes al efecto y del pago de los derechos correspondientes; que en diciembre de 1949, teniendo inscritos caballos a su nombre, solicitaron la renovación de sus licencias, acompañando los derechos necesarios y que la Comisión por conducto de su Secretario les notificó que sus solicitudes habían sido

denegadas; que las reconsideraciones pedidas por ellos fueron declaradas sin lugar, sin oírles y sin darles oportunidad para defenderse; que la Comisión Hípica y su Secretario tienen el deber ministerial de renovarles las licencias interesadas; que en el supuesto de que la renovación de tales licencias fuera una facultad discrecional en la Comisión, la negativa por parte de ésta sin presentación de querellas contra ellos, sin audiencia previa, sin explicación de índole alguna y en forma caprichosa y arbitraria, constituye un claro abuso de discreción; que esa actuación ilegal les está causando graves e irreparables daños; y que incoan el procedimiento de mandamus por no tener otro recurso rápido, adecuado y eficaz. Suplican se ordene a los querellados que procedan inmediatamente a renovarles las licencias como dueños de caballos para el año de 1950, así como que se dicte una medida provisional, bien en auxilio o protección de su jurisdicción, o bien para dar efectividad a la sentencia que pudiera dictarse a favor de los peticionarios, estando dispuestos ellos a prestar cualquier fianza que el tribunal estime razonable exigir.

Al siguiente día el Secretario del tribunal libró el emplazamiento([1]) y cuatro días más tarde el propio tribunal dictó una orden de entredicho, dirigida a los querellados, requiriendo a éstos para que procedieran a renovar a los peticionarios sus respectivas licencias de dueños de caballos en los hipódromos de Puerto Rico, previa prestación de una fianza por la suma de $1,000, y haciendo constar que la misma estaría en vigor por el término de diez días. Solicitada por los querellados la suspensión y modificación de la orden de entredicho, en 3 de febrero el tribunal inferior modificó la misma en el sentido de ordenar a los querellados que expidieran licencias provisionales de dueños de caballos a los peticionarios hasta tanto se resolviera sobre la procedencia de la orden de entredicho dictada. Posteriormente, y luego

---

([1]) Véase *Martínez* v. *Vda. Morales, Secretaria Interina,* ante, pág. 210.

de oír a las partes, el tribunal inferior dictó un auto perentorio de mandamus, dirigido a los querellados, sus sucesores, empleados, agentes o causahabientes para que al recibo del mismo procedan a expedir a Soto y Archilla Laugier sus licencias como dueños de caballos para el año 1950. Los querellados apelaron. También acudieron ante este Tribunal por *certiorari* al decretar el tribunal inferior a instancias de los aquí apelados y por vía de aseguramiento de sentencia, que en cumplimiento del auto dictado se expidiera por los querellados licencia provisional de dueños de caballos a los peticionarios. Expedimos el auto de certiorari solicitado.([2])

Aunque los querellados imputan al tribunal inferior haber cometido diez errores, sólo creemos necesario discutir el cuarto de los señalados. Éste es al efecto de que "El juez sentenciador cometió error al intervenir por medio de un mandamus y dictar auto de mandamus perentorio, cuando el estatuto hípico le negaba toda autoridad de intervención al tribunal sobre la materia en este caso."

■ Dispone el artículo 5 de la "Ley Hípica de Puerto Rico", núm. 11 de 18 de abril de 1932 (pág. 195), según fué enmendado por la Ley núm. 165 de 9 de mayo de 1940 (pág. 961), que:

"La Comisión Hípica Insular queda facultada para reglamentar todo lo concerniente al deporte hípico y a tal objeto tendrá facultad para prescribir las reglas y condiciones por las cuales deberá regirse la celebración de carreras de caballos en Puerto Rico; . . . . . para prescribir, por reglamento los requisitos que deberán llenar las personas que se dediquen a cualquier actividad que se relacione con las carreras de caballos y las que desearen obtener y obtengan de la Comisión licencias para explotar hipódromos y licencia de dueños de caballos, . . . . . ; *Disponiéndose,* que la Comisión Hípica Insular podrá cuando lo estimare conveniente, en beneficio del deporte denegar la solicitud de cualquiera de estas licencias; . . .

---

([2]) Véase el recurso de *certiorari* núm. 1863, *Comisión Hípica de Puerto Rico* v. *Hon. J. Martín Almodóvar, Juez.*

*"Cualquier resolución de la Comisión Hípica denegando la expedición de una licencia será definitiva e inapelable y contra la misma los jueces y tribunales no admitirán demanda ni recurso judicial alguno, ordinario y/o extraordinario."* (Bastardillas nuestras.)

El artículo 5 también reviste de ciertas facultades a la Comisión Hípica y dispone además que:

"Todas estas facultades deberán prescribirse en un Reglamento, el cual deberá ser aprobado por el Gobernador de Puerto Rico y una vez que dicho funcionario le imparta su aprobación tendrá fuerza de ley y las cortes de justicia tomarán conocimiento judicial del mismo."

El Reglamento adoptado por la Comisión en armonía con la facultad otorgádale dispone en su artículo 42 que:

"Toda persona, sociedad o establo que tuviere caballos inscritos o que en lo sucesivo inscribiere a su nombre, deberá proveerse de una licencia de dueño de caballos de carreras, mediante solicitud por escrito dirigida a la Comisión Hípica Insular y previo el pago de veinte (20) dólares; . . . . ."

Y en su artículo 44 que:

*"Las licencias de dueños de caballos vencerán el 31 de diciembre de cada año* y para poderse renovar será necesario que los interesados lo soliciten por escrito del Secretario de la Comisión Hípica Insular haciendo constar los nombres de los caballos de su propiedad." (Bastardillas nuestras.)

El tribunal inferior, luego de referirse a los artículos de la ley y del reglamento arriba copiados hizo constar en el curso de su Relación del Caso y Opinión que el caso que tenía ante sí era uno de renovación y no uno de expedición de licencia, y que después de expedida una licencia original la negativa a renovarla equivalía a una cancelación o revocación de la misma, ya que ninguna disposición de ley autorizaba a llegar a la conclusión de que la licencia quedaba automáticamente cancelada o revocada al transcurrir un año, sino más bien sujeta a renovación a solicitud del inte-

resado. Continuó manifestando que si la negativa a reno-
var una licencia de dueño de caballo equivalía a una cance-
lación o revocación, el artículo aplicable lo era el 7 de la
ley,(3) el cual si bien reserva a la Comisión el derecho a
revocar, cancelar, o suspender temporalmente las licencias
otorgadas dispone que para cancelar cualquiera de las licen-
cias expedidas por ella se concederá a la parte una previa
audiencia y oportunidad de defenderse.

La primera cuestión a ser determinada es, desde luego,
si el tribunal inferior tenía o no jurisdicción para conocer
del recurso. Como hemos visto, el artículo 5 de la ley de
1932, supra, prohibe de manera enfática y taxativa que se
recurra a los tribunales con recursos ordinarios o extraordi-
narios contra cualquier resolución de la Comisión Hípica
denegando la expedición de una licencia. De prevalecer lo
así dispuesto sería innegable que toda intervención judicial
carecería de eficacia. No obstante, como nuestra Carta
Orgánica dispone en su artículo 48 (48 U.S.C., sección 872)
que "Las cortes de distritos podrán conceder autos de man-
damus en todos los casos oportunos," resulta paladino que
lo preceptuado en el referido artículo 5 no puede tener el
alcance de privar al tribunal inferior de jurisdicción para
librar autos de mandamus, ni, por ende, para conocer del
recurso que tuvo ante sí.

De los autos surge que los peticionarios eran due-
ños de caballos; que tenían inscritos los mismos a su nombre
en la Comisión Hípica Insular y que al solicitar la renova-
ción de sus licencias éstas les fueron denegadas sin celebra-

---

(3) El artículo 7 de la Ley 11 de 1932, según fué enmendado por la
núm. 17 de 15 de julio de 1935 (Ses. Ext. pág. 93) dispone en lo per-
tinente así:

". . . . para cancelar cualquiera de las licencias expedidas por la
Comisión Hípica Insular, ésta concederá a la parte una previa audiencia
y oportunidad de defenderse; *Disponiéndose, además*, que cualquier reso-
lución de la Comisión Hípica Insular cancelando la licencia de cualquier
hipódromo será apelable para ante la corte de distrito del lugar donde
resida el apelante. . . . ."

ción de vista, sin darles oportunidad para ser oídos, y sin expresarse los motivos en que tal denegatoria se basaba.

Admitimos que en armonía con lo provisto en la ley, la Comisión querellada estaba ampliamente facultada para adoptar reglamentos y que éstos una vez aprobados por el Gobernador tenían fuerza de ley. Asimismo, que en beneficio del deporte la Comisión estaba facultada para denegar la solicitud de cualesquiera licencias relacionadas con el hipismo. Empero, reiteradamente se ha resuelto que cuando por legislación el estado delega en un organismo gubernamental la facultad de otorgar licencias para dedicarse al ejercicio de una profesión, negocio u ocupación que no es inherentemente lesivo al bienestar público, semejante licencia una vez otorgada se convierte en un derecho personal valioso que no puede ser luego revocado o menoscabado en forma alguna, a no ser mediante la debida notificación y la celebración de una vista justa e imparcial ante un tribunal o junta no prejuiciados. En el presente caso, repetimos, a los peticionarios les fueron otorgadas licencias como dueños de caballos. Las mismas, por disposición expresa del artículo 44 del reglamento vencían el día 31 de diciembre de cada año, teniendo en su consecuencia que ser renovadas de año en año en caso de que las personas a cuyo favor fueron otorgadas así lo interesaran. La negativa a renovar sus licencias, bajo las circunstancias reseñadas, equivalía, conforme indicó el tribunal a quo, a la cancelación de las mismas, no pudiendo la Comisión querellada, mediante el requisito de una renovación de año en año lesionar el derecho de los peticionarios a obtenerlas, a menos que ordenara la celebración de una vista, diera a ellos la oportunidad de ser oídos y concluyese que existían motivos fundados para rehusar expedirlas. Véanse artículo 7 de la Ley 11 de 1932, según figura en la nota 3; *Las Monjas Racing Corporation* v. *Comisión Hípica*, 67 D.P.R. 45, 49; *State* v. *Otterholt*, 15 N.W.2d 529, 531; *Leakey* v. *Georgia Real State Commission*, 55 S.E.2d 818, 819; *State* v. *Swearingen*, 22

N.W.2d 809, 812; XLV Columbia Law Review (1945), págs. 67 *et seq.;* y Gellhorn, *Administrative Law, Second Edition*, 1947, págs. 275.

No habiéndose dado a los peticionarios la oportunidad de ser oídos, la resolución de la Comisión denegándoles las licencias interesadas resultaron contrarias a derecho. El tribunal inferior, por tanto, actuó acertadamente al dictar sentencia en la forma en que lo hizo.

Los demás errores señalados, al efecto de que el tribunal inferior erró al dictar una orden de entredicho mandatorio *ex parte;* al establecer por *fíat* judicial el procedimiento que debe seguir la Comisión querellada al expedir una licencia como la interesada por los peticionarios; al dictar un auto perentorio de mandamus fundado en que la negativa a renovar una licencia equivalía a una cancelación; al resolver que la renovación de tal licencia era una simple cuestión fiscal y que la facultad concedida a la Comisión por el artículo 5 de la ley no es tan absoluto como para denegar una renovación de licencia sin la celebración de una vista, no requieren ulterior discusión.

*Debe confirmarse la sentencia apelada..*