CARMEN DENIS VIUDA DE MALDONADO, como madre con patria potestad sobre el menor MANUEL MALDONADO DENIS, y MANUEL MALDONADO DENIS, demandantes y apelantes, *v.* ASOCIACIÓN FONDO DE AHORRO Y PRÉSTAMO DE LOS EMPLEADOS DEL GOBIERNO INSULAR DE PUERTO RICO, demandada y apelada.

Número 11035.

*Sometido:* 4 de diciembre de 1953. *Resuelto:* 28 de enero de 1954.

848

*M. A. García del Rosario,* abogado de los apelantes; *E. Ramos Antonini,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Se trata de una acción sobre sentencia declaratoria en la cual los demandantes solicitan que se declare nula y sin valor alguno una resolución adoptada por la Junta de Directores de la Asociación Fondo de Ahorro y Préstamo de los Empleados del Gobierno de Puerto Rico, a virtud de la Ley núm. 52, Leyes de Puerto Rico, 1921 (pág. 375), según fué enmendada por la Ley núm. 189, Leyes de Puerto Rico, 1942 ((1) pág. 963). Esta resolución, adoptada el 25 de febrero de 1947, dice en parte como sigue:

"Resolución

"Estableciendo, de acuerdo con el inciso (*d*), sección 20 de la Ley núm. 189, de 1942, el por ciento a ser deducido, en la liqui-

dación final de las pólizas de seguro por muerte e incapacidad física, con el propósito de hacer posible la liquidación mensual de más de cuatro casos e impedir, en lo posible, la continuada acumulación de casos pendientes de liquidar.

"POR CUANTO: La experiencia de siete años ha demostrado que no son liquidables todos los casos de seguros por muerte e incapacidad física que se acumulan mensualmente con el producto de las cuatro cuotas mensuales que la Ley establece como máximo a ser cobrado a los empleados asegurados.

"POR CUANTO: Durante el año fiscal 1945–46, fueron aprobadas por esta Junta de Directores de la Asociación de Empleados del Gobierno Insular 86 reclamaciones de seguros, de ambas categorías, por muerte e incapacidad física, o sea, un promedio de más de 7 riesgos mensuales;

"POR CUANTO: Este promedio de más de 7 reclamaciones de seguros mensuales equivale a más de 3 reclamaciones en exceso del máximo de 4 que fija la Ley para el cobro de cuotas de seguro a los empleados asegurados;

"POR CUANTO: En lo que va del año fiscal en curso 1946–47 esta Junta de Directores ha aprobado 73 reclamaciones de seguro por muerte e incapacidad física, de ambas categorías, lo que arroja un promedio de 9 reclamaciones mensuales, o sea, cinco en exceso del máximo de cuotas cobrables, de acuerdo con la Ley; y

"POR CUANTO: A pesar de ese máximo de cuotas cobrables establecido, la Ley, previendo la posibilidad de la acumulación de casos, en exceso de los cuatro marcados para liquidación, al consignar, en el inciso (d), sección 20 de la Ley núm. 189 de 1942, el siguiente:

" 'DISPONIÉNDOSE, SIN EMBARGO: que el diez (10) por ciento a que se hace mención en el apartado (c) de esta sección, podrá ser aumentado por resolución fundada de la Junta de Directores, siempre que para ello estuviere justificado, con el propósito de impedir que se acumulen casos pendientes de liquidación, o disminuído, cuando la cantidad en dicho fondo se considerare suficiente para liquidar los casos en exceso que puedan surgir en un período razonable de tiempo, a discreción de la Junta.'

"POR TANTO: La Junta de Directores de la Asociación, Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular de Puerto Rico, por las razones consignadas en la parte explica-

tiva de esta Resolución, y en ejercicio de la facultad que le otorga el citado inciso (*d*), sección 20 de la Ley núm. 189, de 1942, RESUELVE:

"1. Aumentar y, por la presente, se aumenta de un 40 por ciento a un 55 por ciento la cantidad a ser descontada de toda póliza de seguro por muerte o por incapacidad física, de la primera y de la segunda categorías, al tiempo de la liquidación final de tales pólizas, conforme al procedimiento de liquidación establecido en la citada sección 20 de la Ley núm. 189 de 1942."

Los demandantes alegaron en su demanda que Manuel Maldonado Denis tiene derecho a que se le pague el 85 por ciento de la suma de $4,261 como beneficiario bajo una póliza a nombre de Manuel Maldonado López. Afirman que bajo la sección 20, según fué enmendada por la Ley núm. 189 de 1942, solamente puede deducirse el 15 por ciento de la suma adeudada al beneficiario: (1) 2 por ciento para el fondo de alivio según lo dispone la sección 20(*a*); (2) 3 por ciento para la devolución de cuotas a los asociados que cesen en su cargo sin quedar acogidos al seguro según lo provisto en la sección 20(*b*); (3) 10 por ciento según se dispone en la sección 20(*c*) para establecer un fondo de reserva "el producto del cual se aplicará a la liquidación de los casos de inutilidad o muerte que resulten en exceso de los cuatro que de acuerdo con la ley deben liquidarse mensualmente con las cuotas autorizadas a descontarse . . ."

Según antes se ha indicado, la resolución del 25 de febrero de 1947 adoptada por la Junta de Directores ordenaba la deducción del 55 por ciento en vez del 10 por ciento para el fondo de reserva establecido por la sección 20(*c*). De acuerdo con esto, la póliza del demandante fué liquidada distribuyéndole al beneficiario el 40 por ciento de la misma y reteniendo la Asociación (1) 2 por ciento para el fondo de alivio, (2) 3 por ciento para la devolución de cuotas a ex empleados, y (3) 55 por ciento para el fondo de reserva provisto en la sección 20(*c*). La actuación de la Junta aumentando a 55 por

ciento el fondo de reserva establecido en la sección 20 (c) se llevó a cabo a tenor con la sección 20 (d) que provee en parte lo siguiente:

"(d) Y el ochenta y cinco (85) por ciento o remanente se aplicará en cada caso a satisfacer el seguro por inutilidad o por muerte por riguroso turno; *Disponiéndose, sin embargo,* que el diez (10) por ciento a que se hace mención en el apartado (c) de esta sección, podrá ser aumentado por resolución fundada de la Junta de Directores, siempre que para ello estuviere justificado, con el propósito de impedir que se acumulen casos pendientes de liquidación o disminuído cuando la cantidad en dicho fondo se considerare suficiente para liquidar los casos en exceso que puedan surgir en un período razonable de tiempo a discreción de la junta; *Disponiéndose, además,* que en caso de que ocurran más de cuatro defunciones o casos de inutilidad en un solo mes, se pagarán éstas en la forma expresada en el apartado (c) o en su defecto, si esto no fuere posible, en los meses subsiguientes por el orden en que hayan ocurrido los fallecimientos o inutilidades; *Disponiéndose, también,* que la Junta de Directores queda por la presente facultada para conceder préstamos a los socios inutilizados y a los beneficiarios de los socios que fallecieren, cuando éstos tuvieren que hacer turnos por un período mayor de dos meses para cobrar el importe del seguro correspondiente, por un plazo no mayor de la fecha en que corresponda al asociado o a sus beneficiarios percibir el importe total del seguro y su cuantía no excederá de un sesenta (60) por ciento de la cantidad que por concepto de seguro habrá de corresponderle, tomando como base el montante del último seguro satisfecho por inutilidad o muerte . . ."

La única cuestión presentada en el caso es si la resolución de la Junta del 25 de febrero de 1947 fué válida bajo los términos de la sección 20 (d). Los demandantes solicitaron sentencia sumaria luego de haber la demandada contestado dos interrogatorios y radicado su contestación a la demanda. La corte sentenciadora declaró sin lugar la moción de los demandantes para que se dictara sentencia sumaria. Entonces éstos solicitaron que se dictara sentencia en su contra con el propósito de apelar. De conformidad con esta solicitud de

los demandantes, la corte dictó sentencia desestimando la demanda. El caso se encuentra ante nos en apelación contra dicha sentencia.

■ Los demandantes señalan tres errores. Sin embargo, todos envuelven la misma cuestión fundamental—la validez de la resolución de la Junta adoptada el 25 de febrero de 1947. No podemos convenir con la contención de los demandantes al efecto de que la sección 20 (d) le permite a la Junta aumentar el fondo de reserva "con el propósito de impedir que se acumulen casos pendientes de liquidación" sólo en un 10 por ciento adicional. No hallamos tal limitación en la sección 20 (d). Por el contrario, claramente deja el importe del aumento—o de la rebaja—a llevarse a cabo en la suma a deducirse de la póliza para este propósito a la discreción de la Junta, sujeto a las normas fijadas en la sección 20 (d).

Los demandantes arguyen que la Asamblea Legislativa no podía válidamente delegarle a la Junta discreción completa e ilimitada con respecto a las deducciones a hacerse para el fondo de reserva provisto en la sección 20 (d). Suponemos que las mismas consideraciones que rigen la delegación de facultades legislativas en el caso ordinario son aplicables a las facultades de la Junta para administrar los fondos de seguros aquí envueltos, sobre los cuales aquéllos que han contribuído a los mismos tienen ciertos derechos adquiridos. *Cf. Arzola* v. *Asociación Fondo de Ahorro*, 72 D.P.R. 421, 424; *Buscaglia, Tes.* v. *Tribl. de Contribuciones, Riera, Interventor*, 67 D.P.R. 568, 578; *Díaz* v. *López*, 47 D.P.R. 543; *García* v. *Soltero*, 65 D.P.R. 300. Pero la Asamblea Legislativa no ha dejado de fijar normas o políticas que sirvan de guía a la Junta en este asunto. Por el contrario, las normas establecidas en la sección 20 (d) son suficientes para cumplir con la regla de que los estatutos que autorizan a las agencias ejecutivas y administrativas a adoptar reglamentación que tenga fuerza de ley son válidos, siempre que dichos estatutos fijen una norma o política, para la cual la reglamentación cubra

los detalles. *Hilton Hotels* v. *Junta Salario Mínimo*, 74 D.P.R. 670, 693, y casos citados.

██ ██ Resta la cuestión de si la Junta adoptó una resolución "fundada" según lo exige la sección 20 (*d*) para justificar los aumentos en las deducciones para el fondo de reserva "con el propósito de impedir que se acumulen casos pendientes de liquidación". Las estadísticas en los autos, que no cuestionan los demandantes, demuestran lo siguiente: En 1937 cuando se aprobó la Ley núm. 150, Leyes de Puerto Rico, 1936–1937 (pág. 399), el número de casos acumulados por inutilidad física era de 89, y el número de casos de muerte era de 72, produciendo un total de 161 casos. El 3 de octubre de 1944, la Junta, a tenor con la Ley núm. 189 de 1942, adoptó la primera resolución disponiendo un aumento en las deducciones para el fondo de reserva del 10 por ciento al 20 por ciento. Cuando se aprobó dicha resolución, se habían acumulado 110 casos de inutilidad física y 62 de muerte, haciendo un total de 172 casos. El 10 de septiembre de 1946, la Junta adoptó su segunda resolución, aumentando las referidas deducciones del 20 por ciento al 40 por ciento. En dicha fecha había pendientes de liquidación 130 casos de inutilidad física y 74 de muerte. El 25 de febrero de 1947 la Junta adoptó la resolución aquí envuelta, aumentando las deducciones para el fondo de reserva de un 40 por ciento a un 55 por ciento. En dicha fecha se habían acumulado 149 casos de inutilidad física y 73 de muerte, haciendo un total de 220 casos.

A la fecha en que se suministró esta información al tribunal sentenciador—20 de junio de 1951—había 76 casos pendientes de liquidación. De éstos, la fecha de la muerte en el más antiguo era el 26 de julio de 1950, o aproximadamente un año antes del 20 de junio de 1951. Por otro lado, el 3 de octubre de 1944—fecha de la primera resolución aumentando las rebajas del 10 por ciento al 20 por ciento—el caso más antiguo pendiente de liquidación tenía aproximadamente 2½ años; a la fecha del segundo aumento del 20 por ciento al 40 por ciento—10 de septiembre de 1946—el caso más antiguo

tenía tres años; el 25 de febrero de 1947—cuando la resolución aquí envuelta se aprobó aumentando las rebajas de un 40 por ciento a un 55 por ciento—el caso más antiguo tenía tres años esperando liquidación.

Desde luego, la demandada no podía arbitrariamente aumentar las rebajas para el fondo de reserva establecido en la sección 20(d). Pero los hechos que hemos expuesto no demuestran que su actuación fuera arbitraria. Por el contrario, creemos que la resolución aprobada el 25 de febrero de 1947 era "fundada" a la luz de las normas fijadas en la sección 20(d) y de los problemas surgidos con motivo del número de casos bajo la Ley núm. 52, según fué enmendada. Sin los aumentos en las deducciones para el fondo de reserva hechos a virtud de las resoluciones de la Junta, el número de casos pendientes de liquidación sería aún mayor.

Mientras la Junta adopte una política que razonablemente cumpla con las normas prescritas en la sección 20(d), no estamos autorizados para sustituir nuestro criterio por el de la Junta, cuando ésta en el ejercicio de su discreción determina qué aumentos o qué rebajas, de efectuarse algunos, deben llevarse a cabo en las deducciones para el fondo de reserva creado en la sección 20(d). *Ledesma, Admor.* v. *Tribl. de Distrito*, 73 D.P.R. 396, 401, y casos citados. Nadie podría alegar, a base de las estadísticas en autos, que el sistema de seguro establecido por la Ley núm. 52, según ha sido enmendada, está funcionando a perfección. Pero eso obviamente es culpa del sistema de cuotas a pagarse al fondo—y la falta de una base actuarial para el mismo—según lo ha establecido la Asamblea Legislativa, más bien que de cualquier resolución o actuación de la Junta. El remedio, de necesitarse alguno, está en manos de la Asamblea Legislativa y no de la Junta.

*La sentencia del Tribunal Superior será confirmada.*

Los Jueces Asociados Sres. Negrón Fernández, Ortiz y Pérez Pimentel no intervinieron.