4

EDUARDO LÓPEZ LUIGGI, demandante y apelante, *v.* HON. LUIS MUÑOZ MARÍN, GOBERNADOR DE PUERTO RICO ET AL., demandados y apelados.

Número 12004.
*Sometido:* 12 de marzo de 1957. *Resuelto:* 24 de junio de 1957.

*Rubén Gaztambide Arrillaga* y *Antonio E. Rodas,* abogados del apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo* y *Edgar S. Belaval, Procurador Auxiliar,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Eduardo López Luiggi prestó servicios como policía desde 1934 al 1955. En este último año radicó reclamación ante el Jefe de la Policía solicitando pensión bajo la Ley núm. 189, Leyes de Puerto Rico, 1951, 25 L.P.R.A. secs. 361 a 374. Basaba su reclamación en tres accidentes que le ocurrieron en 1943, 1949 y 1955, respectivamente. [1]

[1] Bajo el art. 1 de la Ley núm. 189, Leyes de Puerto Rico, 1951, 25 L.P.R.A. sec. 361, un policía tiene derecho a pensión en "casos de incapacidad para el trabajo físico o muerte" sobrevenida "al evitar o tratar de evitar la comisión de un delito, o al apresar o tratar de apresar a alguien que se pueda presumir razonablemente que está conectado con la comisión de un delito." El art. 1 también dispone que los miembros de la Guardia Nacional, el Cuerpo Insular de Bomberos y los Guardias de Penales—y por una enmienda de 1956, 25 L.P.R.A. sec. 361, Suplemento Acumulativo

Se celebró una vista con respecto a la referida reclamación ante un Comité designado por el Jefe de la Policía. El Comité recomendó que la pensión fuera denegada. A tenor con esta recomendación el jefe de la Policía dictó resolución denegando la pensión.

López radicó entonces demanda ante el Tribunal Superior con el fin de establecer su derecho a pensión a tenor con la Ley núm. 189. La demanda alegaba lo siguiente: Primero, en 1943, mientras hacía fuerzas en un hospital con una ramera que trataba de agredir a una enfermera, el demandante sufrió la fractura de la rodilla izquierda, por la cual el Fondo del Seguro del Estado le concedió una incapacidad del 30 por ciento de las funciones fisiológicas de la pierna. Segundo, en 1949 y mientras investigaba un escalamiento, el demandante resbaló y se cayó, sufriendo una torcedura de la rodilla izquierda y golpes en la cara y oreja del mismo lado, por los cuales el Fondo le concedió una incapacidad del 5 por ciento de su pierna. Tercero, en 1955, mientras el demandante conducía a una persona ante un juez en relación con una investigación por escalamiento, la referida persona se dió a la fuga. Al tratar de perseguirla, el demandante se cayó y recibió golpes en la rodilla y antebrazo izquierdos, por los cuales el Fondo le concedió una incapacidad del 10 por ciento de la pierna. La demanda alega que como resultado de estos accidentes el médico de la Policía dictaminó que el demandante estaba totalmente incapacitado para las funciones de

de 1956, el Cuerpo de Agentes de Rentas Internas—están también cubiertos por la Ley núm. 189.

Esta pensión consiste del sueldo completo que percibía el funcionario. En caso de muerte las viudas y los beneficiarios menores de edad reciben dicha pensión, la cual está exenta de embargo y de contribución sobre ingresos. Esta pensión es en adición a cualquier compensación concedida por el Fondo del Seguro del Estado.

El art. 9 dispone: "Los procedimientos judiciales que fueren necesarios para cumplir las disposiciones de esta Ley se tramitarán por el Departamento de Justicia, libres del pago de derechos y de honorarios a los funcionarios judiciales...". En el caso de autos el Secretario de Justicia comparece en representación de los demandados, mientras que el demandante está representado por abogados designados por él mismo.

su cargo, pero el Jefe de la Policía le denegó su reclamación de pensión bajo la Ley núm. 189.

Los demandados radicaron contestación admitiendo los anteriores hechos, excepto que negaron que en el accidente de 1955 la persona envuelta hubiera sido arrestada. También alegaron que la negativa del Jefe de la Policía al concederle una pensión al demandante bajo la Ley núm. 189 "no le priva de sus derechos".

Ante el Tribunal Superior no se practicó prueba en este caso. Más bien el tribunal sentenciador lo trató como una petición para que se revisara la decisión de una agencia administrativa. Por consiguiente, se limitó a un examen del récord de la prueba que se le sometió al Comité únicamente para determinar si el Jefe de la Policía había cometido algún error de derecho al ceñirse a la recomendación del Comité. El Tribunal Superior declaró como conclusión de derecho que, bajo los hechos envueltos en los tres accidentes, según los encontró probados el Comité, ninguno de dichos accidentes caía dentro de las disposiciones de la Ley núm. 189. De conformidad, dictó sentencia a favor de los demandados. De dicha sentencia el demandante apeló para ante este Tribunal.

Revocamos la sentencia del Tribunal Superior ordenándole que celebrara un juicio sobre los hechos a fin de determinar si el demandante tenía derecho a una pensión bajo la Ley núm. 189. El caso se encuentra ahora ante nos en moción de reconsideración radicada por los demandados.

Examinaremos primeramente la contención de los demandados al efecto de que la decisión del Jefe de la Policía denegando la reclamación de pensión del demandante es final y obligatoria y no puede ser revisada judicialmente.([2]) La

---

([2]) Los demandados no interpusieron tal contención ante el tribunal sentenciador. Más bien radicaron una contestación en los méritos y asumieron la posición de que el tribunal a quo debe determinar—a base del récord aducido ante el Comité designado por el Jefe de la Policía—si éste cometió algunos errores de derecho. También, es de aplicación aquí, según los demandados, el alcance de la revisión expuesto en *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377. Véase el texto de la opinión que precede al escolio 7.

8

Ley núm. 189 guarda silencio sobre esta cuestión. Pero tal silencio no impide necesariamente la revisión judicial. *Rivera v. Benítez, Rector,* supra, págs. 381–82; *Estep* v. *United States,* 327 U.S. 114, 120; *Stark* v. *Wickard,* 321 U.S. 288, 309; Schwartz, *French Administrative Law and the Common-Law World,* págs. 152–53. Sin embargo, "... la revisión judicial implícita no existe automáticamente para la revisión de las decisiones de todas las agencias administrativas. Cada caso debe determinarse por sus propios méritos a base de la intención de la Legislatura." *Rivera* v. *Benítez, Rector,* supra, pág. 382, escolio 1; *Emanuelli* v. *Tribl. de Distrito,* 74 D.P.R. 541, 549.

Existen casos que resuelven que cuando se conceden beneficios o privilegios por el Estado bajo leyes que disponen que las decisiones administrativas sobre reclamaciones de aquéllos son finales y concluyentes, no puede instarse acción judicial contra el Estado para hacer valer tal reclamación. *Mario Mercado e Hijos* v. *Benson,* 231 F.2d 251 (C.A. D.C., 1956); *Bravo* v. *Tesorero de P. R.,* 76 D.P.R. 154, 164, confirmado en *Iglesias Costas* v. *Secretary of Finance,* 220 F.2d 651, 653 (C.A. 1, 1955); *Ford* v. *United States,* 230 F.2d 533 (C.A. 5, 1956); Schwartz, supra, págs. 157–59; Schwartz, 9 Ad. L. Bull. 75, 110–12 (1957); Jaffe, *Judicial Review: Question of Fact,* 69 Harv. L. Rev. 1020, 1045–52, y casos citados; *1956 Annual Survey of American Law,* Schwartz, *Administrative Law,* 32 N. Y. U. L. Rev. 75, 85, escolio 45, y casos citados; Gellhorn y Byse, *Administrative Law,* págs. 171–204; Forkosch, *Administrative Law,* págs. 54–60, 585; Parker, *Administrative Law,* págs. 262–64. *Cf. Sacarello* v. *Junta de Retiro,* 75 D.P.R. 267, 277, discutido en el escolio 6, infra; *Application of Iverson,* 39 N.W.2d 797 (Neb., 1949).[3]

_____

[3] Los casos que envuelven problemas tales como la deportación de extranjeros, ningún papel juegan en situaciones como la del presente caso. *Cf. Jay* v. *Boyd,* 351 U.S. 345; *Heikkila* v. *Barber,* 345 U.S. 229; Schwartz, *French Administrative Law and the Common-Law World* 156.

Los casos citados en el último párrafo que prohiben la revisión judicial no son de aplicación a éste. En primer lugar, la Ley núm. 189 no designa un funcionario administrativo que determinará en primera instancia el derecho de un peticionario a una pensión bajo la Ley núm. 189. Nada encontramos en la Ley núm. 189 que ordene, según alegan los demandados, que el método usado bajo la Ley núm. 447, Leyes de Puerto Rico, 1951, 3 L.P.R.A. secs. 761 et seq., para conceder pensiones es de aplicación en este caso. Por el contrario, la Ley núm. 189, al proveer un tipo de retiro diferente y único a ser administrado separadamente y aparte del Sistema General de Retiro, no designa un funcionario que pasará sobre las reclamaciones bajo la misma. [4] En segundo lugar, la Ley núm. 189 no contiene disposición alguna para vista en relación con una reclamación bajo la referida Ley núm. 189. [5] En tercer lugar, la Ley núm. 189, como sucede

---

[4] Como indicamos más luego, por necesidad el ejecutivo puede llenar la laguna existente en la Ley núm. 189 y designar un funcionario específico para que pase sobre tales solicitudes. Por ejemplo, el Jefe de la Policía, el Jefe del Servicio Insular de Bomberos, el Secretario de Justicia para los Guardias Penales, y el Secretario de Hacienda para los Agentes de Rentas Internas concebiblemente pueden ser designados para resolver reclamaciones de sus subalternos. (Estas designaciones variadas tenderían a menoscabar la supuesta pericia de los funcionarios que adjudicarían las reclamaciones. Véase Schwartz, *French Administrative Law and the Common-Law World*, pág. 193.) Pero la posibilidad de la designación de estos funcionarios y la creación de un procedimiento administrativo *por acción ejecutiva* no invalida nuestro razonamiento de que el dejar la Ley núm. 189 de conferirle a un funcionario ejecutivo específico o a una agencia administrativa la facultad de resolver tales reclamaciones bajo la Ley núm. 189, es uno de los factores indicativos de que la Asamblea Legislativa no tuvo por miras impedir el que se recurra a los tribunales cuando por acción ejecutiva se deniega una reclamación de retiro bajo la Ley núm. 189.

[5] En este caso se celebró una vista. Pero toda vez que ninguna era exigida por la Ley núm. 189, debemos tratar el estatuto—al determinar la intención legislativa en cuanto a la disponibilidad de la revisión judicial—como si no se hubiera provisto vista alguna. *Doherty* v. *McElligott*, 16 N.Y.S. 2d 489 (N.Y., 1939); Nota, *Review of Administrative Action*, 70 Harv.L.Rev. 698, 703. Si bien convenimos con el caso de *Doherty* en cuanto a la disponibilidad de la revisión judicial bajo tales circunstancias, según se indicará en el escolio 9, no convenimos con el criterio expresado en el caso de *Doherty* al efecto de que una presunción de corrección acompaña la decisión del administrador *en la clase de caso aquí envuelto* cuando el estatuto no dispone vista administrativa alguna.

en los casos citados en el párrafo anterior que niegan la revi-- sión judicial, no dispone específicamente que la determinación. administrativa sea final y no prohibe la revisión judicial. En: vista de estas circunstancias, concluimos que la Asamblea Legislativa no tuvo por miras negarle al reclamante en este· caso acceso a los tribunales. Esto es particularmente cierto· en virtud de los muchos casos existentes en esta jurisdicción en que los tribunales han pasado sobre los derechos de aquéllos, que reclaman pensiones. Véanse 3 L.P.R.A. sec. 762, casos. anotados a las págs. 647 a 653; *Esteves* v. *Junta de Retiro*,. 60 D.P.R. 98; *Jiménez* v. *Junta de Retiro*, 61 D.P.R. 171; *In re Castro y Torres Braschi*, 73 D.P.R. 564; *Sacarello* v.. *Junta de Retiro*, supra.([6])

Pasamos ahora a la cuestión del alcance de la revisión por los tribunales en el caso ante nos. No podemos: convenir con los demandados y con el tribunal sentenciador en que el caso de *Rivera* v. *Benítez, Rector*, supra, sea decisivo· sobre este punto. En este último caso la Asamblea Legis-- lativa expresamente dispuso una vista y una decisión por un.

([6]) Aun cuando el Tribunal se dividió sobre si la demanda en el caso de· *Sacarello* aducía una causa de acción, concurrimos unánimemente en el` principio de que el reclamente de una pensión en dicho caso tenía derecho· a acudir a los tribunales. (La opinión de la mayoría a la pág. 276 y la opinión disidente del Juez Asociado Sr. Negrón Fernández, a las págs. 282· a 283, indican que de conformidad con los casos sobre beneficios o privilegios arriba citados la actuación de la Junta de Personal, en casos de· empleados del Gobierno, con la excepción de los de destitución, era final según lo disponía el estatuto. *Cf.* la opinión disidente del Juez Asociado· Sr. Belaval, a las págs. 294 a 297.)

Al sostener que en este caso no existe revisión judicial alguna, los. demandados descansan en casos que han resuelto en el pasado que los. reclamantes no tiene derechos adquiridos en pensiones del gobierno.. Véanse *Esteves* v. *Junta de Retiro*, supra; *MacLeod* v. *Fernández*, 101 F.2d 20 (C.A. 1, 1938); *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 568. Es innecesario que reexaminemos lo resuelto en dichos casos.. Basta decir que ninguno de ellos niega acceso a los tribunales cuando,. como en este caso, la Asamblea Legislativa no ha tratado de despojar a los· reclamantes de sus derechos a pensiones.

*Cf. Cruz* v. *Comisión Hípica*, 65 D.P.R. 749; *Las Monjas Racing Corp..* v. *Com. Hípica*, 67 D.P.R. 45; *Mercado* v. *Comisión Hípica*, 71 D.P.R. 403; *Archilla* v. *Com. Hípica*, 72 D.P.R. 425; *Denis* v. *Asoc. Fondo de Ahorro*,. 75 D.P.R. 847, apelación desestimada, 222 F.2d 78 (C.A. 1, 1955).

cuerpo administrativo específico. Las cuestiones planteadas en dicho caso fueron (1) si bajo las circunstancias del mismo existió una revisión judicial implícita de la decisión del cuerpo administrativo el cual venía obligado por estatuto a celebrar una vista y rendir una decisión, y (2) el alcance de tal revisión judicial implícita, de resolver nosotros que existía.

Al contestar la primera pregunta resolvimos que existía una revisión judicial implícita. Sobre la segunda pregunta, dijimos a las págs. 381–82 que ". . . no encontramos base alguna para resolver que tal revisión judicial deba consistir de un juicio *de novo*. Por el contrario, este último método se usa para revisar la actuación de una agencia administrativa solamente cuando el estatuto expresamente así lo provee. *In re Ortiz* v. *Venegas, Alcalde*, 43 D.P.R. 390; *Coll* v. *Todd, Alcalde*, 35 D.P.R. 625; *Marín et al.* v. *Pagán*, 52 D.P.R. 966 (*per curiam*); Davis, supra, pág. 425 *et seq*. En ausencia de tal disposición estatutaria, las cortes no celebran un juicio *de novo*. Más bien se limitan a examinar el récord de los procedimientos habidos ante la agencia administrativa, siempre y cuando exista como en este caso un récord completo de tales procedimientos. Y cuando, como ocurre aquí, también el estatuto guarda silencio con respecto al alcance de la revisión, las cortes sólo determinan si el cuerpo administrativo cometió error sobre cuestiones de derecho. Sin embargo, una de las cuestiones de derecho es si el récord administrativo contiene evidencia sustancial para basar las conclusiones de hecho del cuerpo administrativo. . . .".([7])

--------

([7]) Al mismo efecto, *Ledesma, Admor.* v. *Tribl. de Distrito*, 73 D.P.R. 397; *Ferenz* v. *Folsom*, 237 F.2d 46 (C.A. 3, 1956); *Schaffer* v. *United States*, 139 F.Supp. 444, 448 (U.S. Dist.Ct., S.D. 1956); *Hornauer* v. *Division of Alcoholic Beverage Control*, 123 A.2d 574 (N.J., 1956); Schwartz, 9 Ad.L.Bull. 75, 123–24; Goldstein, *Judicial Review of Administrative Action through Article 78 of the Civil Practice Act (1937–1951)*, 2 Syracuse L. Rev. 199, 202–03; Jaffe, *Judicial Review: Question of Fact*, 69 Harv.L.Rev. 1020, 1025 *et seq.*; Gelhorn y Byse, supra, *Scope of Judicial Review*, pág. 424 *et seq.*; *1956 Annual Survey of American Law*, Schwartz, *Administrative Law*, 32 N.Y.U. L. Rev. págs. 87–88.; Davis, *Administrative Law* 868; Forkosch, supra, 716; Davis, *Cases on Administrative Law* 980.

El problema en cuanto al alcance de la revisión en el caso de autos es diferente del que se presentó en el caso de *Rivera*. Como hemos visto, la Ley núm. 189 no tiene disposición alguna ni para una vista y decisión administrativas, ni para revisión judicial de tal decisión administrativa. [8] Si la Ley núm. 189 hubiera dispuesto, como en el caso de *Rivera*, una vista y decisión administrativas por un funcionario o agencia administrativa específica, muy bien podríamos resolver que en este caso existía una revisión judicial implícita *limitada* según se describe en el caso de *Rivera*. Sin embargo, en vista del silencio del estatuto sobre estas cuestiones, no encontramos base para que este Tribunal cree tanto un procedimiento administrativo como una revisión judicial *limitada* del mismo.

El haber dejado el estatuto de establecer un procedimiento administrativo no quiere decir que las autoridades adecuadas no puedan hacer determinaciones administrativas de reclamaciones de pensiones bajo la Ley núm. 189. Véanse los escolios 4 y 5. Pero tal maquinaria interna, creada por acción ejecutiva para llenar una laguna en el estatuto, no puede servir de base para restringir la autoridad de los tribunales. Ya hemos resuelto que una vez que se deniega una pensión bajo la misma—en vista de (1) el no proveer la Ley núm. 189 una vista administrativa, (2) la naturaleza del caso y (3) la ausencia de una prohibición estatutaria contra remedio judicial—al reclamante no se le puede prohibir el

---

[8] Los policías—así como todo otro empleado del Gobierno—que queden incapacitados para el servicio como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, tienen derecho a recibir una anualidad por incapacidad ocupacional a tenor con el art. 9 de la Ley núm. 447, Leyes de Puerto Rico, 1951, 3 L.P.R.A. sec. 769. Pero según convienen los demandados, este artículo no es de aplicación aquí. El mismo cubre una incapacidad ocupacional corriente; además provee para pago del Fondo de Retiro y no, como bajo la Ley núm. 189, de los fondos generales del Tesoro. En igual forma, el art. 11 de la Ley núm. 447, 3 L.P.R.A. sec. 771, en tanto en cuanto el mismo establece un procedimiento administrativo para determinar las reclamaciones de retiro, únicamente se aplica a casos que surjan bajo la sec. 769 y no a reclamaciones como la presente que surgen a tenor con la Ley núm. 189. Véanse los escolios 4 y 5.

radicar su acción como en este caso para hacer valer su alegado derecho a pensión bajo la Ley núm. 189. Y tal reclamación—en ausencia de disposiciones estatutarias para (*a*) una vista y decisión administrativas y (*b*) una revisión judicial limitada de aquélla—debe indefectiblemente seguir el curso corriente de una acción ordinaria en que el tribunal sentenciador oiga independientemente la prueba y llegue a sus propias conclusiones de hecho y de derecho.(⁹) Convenimos con los demandados en que éste es un resultado desgraciado y que sería más deseable un sistema de determinación

---

(⁹)"Al revisar actuaciones administrativas realizadas sin vista, los tribunales de ordinario revisan las conclusiones de hecho del administrador. Para poder revisar estas conclusiones, debe aducirse prueba sobre todas las cuestiones de hecho en disputa ya que no hay un récord contencioso en que el tribunal pueda descansar." Nota, *Review of Administrative Action*, 70 Harv.L.Rev. 698, 699; Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv.L. Rev. 953, 966. Aun cuando en el presente caso de hecho se celebró una vista, el estatuto ninguna requería y, por consiguiente, debemos tratar el caso como si ninguna se hubiera celebrado. Véase el escolio 5.

Los casos de Nueva York, si bien permiten la revisión judicial y la presentación de prueba en la vista judicial bajo tales circunstancias, confieren una presunción de corrección a la decisión del administrador, no empece la falta de una vista estatutaria ante éste. Véanse las autoridades citadas en el escolio 5; *Eichler* v. *McElligott*, 18 N.Y.S.2d 508 (N.Y., 1940); Goldstein, supra, 203–05. Sin pasar sobre la cuestión de si adoptaríamos esta fórmula en otras situaciones, no podemos adoptar la misma en la clase de caso que ahora está ante nos. En ausencia de una vista propiamente dicha, provista por el estatuto, ante un perito que se designe que emita conclusiones específicas de hecho basada en la prueba que por el estatuto viene obligado a anotar y someter a los tribunales, creemos que, hasta que la Asamblea Legislativa actúe, los tribunales deben en un caso de pensión, ejercitar su criterio independiente tanto sobre los hechos como sobre la ley en el procedimiento judicial original. Esto está de acuerdo con el criterio expresado en Nota, supra, 70 Harv.L.Rev. 698, 701: "A tal fin, la determinación judicial independiente de hechos en controversia parece proceder en aquellos casos en que la Asamblea Legislativa no haya conferido *expresamente* a la determinación administrativa alguna presunción de corrección." (Bastardillas nuestras.) Véase *Hughes* v. *Board of Higher Education of City of N. Y.*, 130 N.E.2d 638 (N.Y., 1955). *Cf. New Hampshire Fire Ins. Co.* v. *Murray*, 105 F. 2d 212 (C.A. 7, 1939); Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv.L.Rev. 953, 967, escolio 48. Véase, además, Jaffe, *Judicial Review: Question of Law*, 69 Harv. L Rev. 239.

administrativa por un solo cuerpo experto y permanente, junto a una revisión judicial limitada, a base de récord. Pero tal fórmula debe ser establecida por la Asamblea Legislativa. No podemos crearla nosotros por fíat judicial.[10]

 El tribunal sentenciador determinó que bajo los hechos que la Junta de Retiro halló probados, los accidentes de 1943 y de 1949 no caían dentro de las disposiciones de la Ley núm. 189 como cuestión de derecho. Creemos conveniente indicar que la Ley núm. 189 no contiene lenguaje alguno indicativo de que la misma tendría efecto retroactivo.[11] Por consiguiente, no puede concederse pensión alguna por aquellos accidentes como tales, ya que ocurrieron antes de la aprobación de la Ley núm. 189 en 1951. Véase *Atiles, Admor.* v. *Comisión Industrial*, 77 D.P.R. 511. Sin embargo, no aprobamos el siguiente lenguaje del tribunal

---

[10] Nos damos cuenta de nuestro lenguaje en el caso de *Rivera* v. *Benítez, Rector*, a la pág. 382, arriba citado al efecto de que un juicio *de novo* "... se usa para revisar la actuación de una agencia administrativa solamente cuando el estatuto expresamente así lo provee." Pero dicho lenguaje solamente se aplica cuando, como en el caso de *Rivera*, a una agencia administrativa se le faculta específicamente por estatuto para celebrar una vista y emitir una decisión. Como hemos visto, bajo la Ley núm. 189 no se establece tal procedimiento. No podemos, reiteramos, inventar (1) un procedimiento administrativo, (2) una revisión judicial del mismo, y (3) una limitación del alcance de dicha revisión judicial. El silencio de la Ley núm. 189 en todos y cada uno de estos tres puntos, nos compele a resolver que toda vez que el estatuto no impide una revisión judicial, un reclamante cuya pensión le es denegada administrativamente puede demandar por la misma en una acción judicial ordinaria. *Cf. Arzola* v. *Asoc. Fondo de Ahorro*, 72 D.P.R. 421. Solamente la Asamblea Legislativa puede corregir este resultado indeseable.

En otros casos el Tribunal Superior ha usado el enfoque que adoptamos en este. caso: ha recibido prueba y ha emitido sus propias conclusiones de hecho en casos surgidos bajo la Ley núm. 189. *Montañez* v. *Roig, etc.*, núm. 11646, y *González* v. *Gobernador de Puerto Rico, etc.*, núm. 11895, confirmados mediante sentencia en el día de hoy.

[11] El art. 2 de la Ley núm. 189 prescribe en parte como sigue: "Por la presente se ordena el pago a todo miembro del Cuerpo de la Policía Insular de Puerto Rico ... que resultare incapacitado para continuar en el servicio ... cuando tal incapacidad ... ocurriere bajo las circunstancias relacionadas en el Artículo 1 de esta Ley, de una pensión anual ... ". La enmienda de 1956—25 L.P.R.A. sec. 362, Suplemento Acumulativo de 1956— no efectuó cambio alguno a este respecto.

sentenciador: "Además, como muy bien dice la parte deman-dada, la incapacidad otorgádale al demandante en virtud de este último accidente fué únicamente de un diez por ciento de las funciones fisiológicas de la rodilla izquierda, que de por sí no hubiera incapacitado totalmente al demandante para trabajo físico." Por el contrario, la Ley núm. 189 no requiere prueba de que el accidente más reciente por sí solo fué la causa de la incapacidad contemplada por la Ley núm. 189. Sería suficiente si dicho último accidente—si bien únicamente agravó una incapacidad parcial ya existente—resultara en incapacidad total para el trabajo físico, siempre que el acci-dente caiga dentro de los términos de la Ley núm. 189. *Cf. Colón* v. *Comisión Industrial,* 59 D.P.R. 850; *Cordero, Admor.* v. *Comisión Industrial,* 62 D.P.R. 647; *Cordero* v. *Comisión Industrial,* 68 D.P.R. 127; *Atiles* v. *Com. Industrial,* 69 D.P.R. 630; *Vda. de Salazar* v. *Admor. Fondo del Estado,* 76 D.P.R. 108; *Rivera* v. *Comisión Industrial,* 79 D.P.R. 386; 1 Larson, *Workmen's Compensation Law,* sec. 12.20, págs. 170–75.[12]

Devolveremos el caso para que el tribunal sentenciador practique prueba y emita conclusiones de hecho y de derecho. Existen por lo menos dos cuestiones con que dicho tribunal debe enfrentarse. Primeramente, debe determinar los hechos en cuanto al accidente de 1955, y entonces decidir como cues-

---

[12] Si bien estos casos de compensaciones por accidentes del trabajo no son estrictamente aplicables, creemos que la Asamblea Legislativa tuvo por miras el mismo resultado en la Ley núm. 189.

En los casos de *Atiles, Salazar* y *Rivera,* este Tribunal se dividió sobre la cuestión de si había ocurrido un accidente. Ese problema no existe aquí. El Tribunal es unánime en cuanto a la proposición de que si la prueba demuestra que ocurrió un accidente, un reclamante—bien sea en un caso de compensaciones por accidentes del trabajo o bajo la defini-ción hallada en la Ley núm. 189—tiene derecho a obtener su remedio cuando el accidente agravó una condición que existía anteriormente. La opinión de la mayoría en el caso de *Salazar* admite esto en cuanto a com-pensaciones por accidentes del trabajo. Dice a la pág. 119: "Si el Dr. Salazar, en el curso de aplicarle Rayos X a sus pacientes, se hubiera que-mado la mano en una o en varias ocasiones razonablemente identificables y hubiera por ello contraído *o se hubiera agravado un cáncer que ya tenía,* el caso sería uno de lesión por accidente." (Bastardillas nuestras.)

tión de derecho si esa clase de accidente cae dentro de los términos de la Ley núm. 189. En segundo lugar, suponiendo que la primera pregunta se conteste en la afirmativa, debe determinar si el accidente de 1955 por sí solo o agravando una lesión anterior, "incapacitó al demandante para el trabajo físico". No insinuamos criterio alguno sobre ninguna de estas cuestiones.(13)

*La sentencia del Tribunal Superior será revocada y el caso devuelto para vista en los méritos.*

El Juez Asociado Sr. Belaval concurre en el resultado.

El Juez Asociado Sr. Marrero no intervino.

---

(13) Al discutir el problema de determinar la cubierta de la Ley núm. 189 como cuestión de derecho, el alegato de los demandados cita por analogía los casos de *Holmberg* v. *City of Oakland,* 203 Pac. 167, 168, segunda columna (Calif., 1921); *Buckley* v. *Roche,* 4 P.2d 929 (Calif., 1931); *Vernon* v. *Firemen's Pension Fund of Philadelphia,* 52 A.2d 199 (Pa., 1947); *Sabathier* v. *Board of Trustees,* 72 So. 2d 1 (La., 1954). Dejamos para otra oportunidad la determinación de si cualquiera de estos casos vierte alguna luz sobre la cubierta de la Ley núm. 189.